## TOLMAN *v.* LEONARD.

EQUITY JURISDICTION; ALIMONY; CONTEMPT OF COURT; ORDER OF COMMITMENT.

1. The Supreme Court of this District has jurisdiction to pass an order requiring payment of alimony and to enforce it by committing the party to jail if he refuses to obey it.

2. The answer of the respondent to a rule to show cause why he should not be punished for contempt of court for refusing to obey an order to pay alimony, is not conclusive, and the court may look beyond it if justice demands.

3. It is not essential that an order of commitment for contempt of court should recite the facts necessary to show that the court had jurisdiction where the record of the proceedings upon which the order is based discloses such facts.

4. Such an order of commitment should be for a definite period, but its failure to fix a definite period will not render it void where the record of the proceedings shows that its intent is that the confinement shall be until the decree of the court shall be complied with.

No. 446.   Submitted April 11, 1895.   Decided May 7, 1895.

HEARING on an appeal by the petitioner from an order discharging a writ of *habeas corpus* and remanding petitioner to the custody of the warden of the jail. *Affirmed.*

The COURT in its opinion stated the case as follows:

The appellant, George R. Tolman, has been committed to the custody of the appellee as warden of the District jail, for contempt in the disobedience of an order of the Supreme Court of the District requiring him to pay certain alimony to his wife, Eva R. Tolman. She instituted suit against him for permanent alimony, and therein, on May 2, 1892, an order was made directing him to pay her $50 per month, besides certain sums as counsel fees. An appeal was taken from that order to this court.

The appeal involved the question of the jurisdiction of the court to make a decree for permanent alimony grounded upon causes other than those upon which judicial separation or divorce *a mensa et thoro* could be decreed by the ecclesiastical court of England, and also the reasonableness of the amount of the allowance as made. The order appealed from was affirmed November 6, 1893. See *Tolman* v. *Tolman,* 1 App. D. C. 299.

The record showed that the husband, George R. Tolman, was an employee of the United States Government in the Life Saving Service at Washington, receiving an annual salary of $1,800, payable monthly, besides which he is an architect, from which profession he also derives some income. With respect to the amount of the allowance, this court, speaking through the Chief Justice, said: " That depends largely upon the extent of the *delictum* and the pecuniary circumstances of the husband. It is mainly a matter of discretion in the court below, though a judicial and not an arbitrary discretion. A court of appeals must see clearly that the allowance is excessive before it will interfere to reduce it. In this case, looking to all the disclosures made in the pleadings, we cannot say that the

allowances for support *pendente lite*, and for counsel fees, are excessive. In view of the salary received by the defendant, these allowances would seem to be reasonable."

The execution of the order was suspended by the appeal, and it was not complied with. On December 14, 1893, Mr. Justice HAGNER, holding the special equity term, passed an order requiring the said George R. Tolman to show cause on December 22, why he should not be committed for contempt for failing to comply with the decree of May 2, 1892.

Hearing was set for February 28, 1894, at which time respondent filed an answer under oath. Nothing more seems to have been done in the matter until February 12, 1895, when he was again ordered to show cause on February 16. Respondent answered the rule under oath, wherein, after disclaiming any intention or purpose to disobey the court, he says that he has been "ready and willing to receive the petitioner and to make an ample provision for her wants and necessities according to his full obligations under the law," and that he made her such an offer in good faith, which she declined, He says further that he wrote petitioner in September, 1894, in good faith expressing a desire that she should resume her residence with him ; that she came to Washington in November and saw him, and he then and there repeated his offer " to receive the petitioner and resume residence with her and provide for her support," which she rejected, protesting her hatred of him, etc. He says that he is still ready and willing to receive and support her.

The answer concludes with the following paragraph :

" The respondent is at present and has for months past been unable, because of want of means, to respond to the requirements of the said order of May 2nd, A. D. 1892, and because of his absolutely necessary expenses, which were not made in order to defeat the said order, he is now in a financial condition rendering it impossible for him to pay the petitioner a greater sum at this time than $40.00,

which he tenders himself ready to do, protesting, however, that, as he is advised and believes, his obligation further to comply·with the said order became, in equity, at an end with his tender aforesaid, on the 28th day of February, A. D. 1894, to receive the petitioner and piovide for her as his wife."

The first answer filed contains the following statement excusing respondent from payment on account of want of means :

"The respondent since the said 2nd day of May, 1892, and since the filing of the petition herein, has been in re= ceipt of a salary as an architect in the employ of the United States Government, to wit, in the office of the Life-Saving Service of the Treasury, of eighteen hundred (1,800) dol- lars per annum, which said salary has constituted and still constitutes the sole resources of the respondent, being for the months from May to Decembr, inclusive, of the year 1892, and for the year 1893 the sum of three thousand dollars ($3,000) in all. During the said time the respond- ent has expended in legitimate and necessary expenses for his support and the support of a parent, in part dependent upon him, a sum slightly in excess of the said sum of $3,000, of which the sum of $650 was expended in a trip taken upon the advice of his physician, and necessary for the restora- tion of his health and the prevention of serious physical consequences to the respondent, if not of his complete phys- ical breakdown from disease. Another portion of the said sum of $3,000 has been expended by the respondent in the purchase of books and other articles essential to him in his profession as an architect, and in order to properly maintain himself in the discharge of his duties aforesaid, upon which his livelihood wholly depends. The main portion of the said sum of $3,000 has been expended by the respondent in paying for his lodging and maintenance, and none of it has been wilfully or improvidently expended. The re- spondent's appeal having, as aforesaid, been pending since, to wit, the said 2nd day of May, A. D. 1892, until and in-

cluding the said 6th day of November, A. D. 1893, and a previous rule upon him to show cause why he should not be adjudged in contempt for not obeying the order aforesaid of the 2nd day of May, 1892, in reference to the pay-ment of moneys for the support of the petitioner and her counsel fees having been discharged with costs, he *bona fide* believed himself to be under no necessity to make provision against the possible affirmance by the said Court of Appeals of the said order of the 2nd day of May, A. D. 1892, aforesaid, and he is now wholly without the means to gratify and meet the requirements of the said order if the same be construed to require that he shall forthwith and at once pay the sum total accruing under the said order of the 2nd of May, A. D. 1892, since its date. He professes and hereby tenders himself ready and willing to abide by and perform whatever order the court may deem proper in the premises looking to the support of the petitioner, but he protests his inability otherwise to comply with the order of the court in the premises."

An affidavit of respondent's brother, filed with his an-swer, showed that he had called on the said Eva Tolman in January, 1895, on behalf of respondent; that she had told him she did not believe respondent's offer was sincere and did not know what kind of treatment she would receive; "that she did not want to live with him on terms of merely passing the time of day, although she would expect no affection from him and had none for him; that she was afraid of the treatment she might receive at his hands and feared to live with him." That she had at other times said if the courts should decide against her she would accept respondent's offer and live with him. That she said also she did not need money from respondent, as "she had always gotten along herself and always could do so."

On the hearing Mr. Justice HAGNER made the following order:

"On this 16th day of February, 1895, it is ordered that if the defendant shall pay to the complainant, through her

counsel, on or before the 19th inst., at 10 o'clock, six hundred dollars, the full amount of one year's allowance for alimony under the decree of this court, he will be relieved from the operation of the rule passed herein on the 12th of February, but that if he shall neglect to make such payment he shall be committed to the custody of the marshal as for a contempt of the order of this court.

" It is further adjudged and ordered that upon the payment by the defendant of said sum of six hundred dollars by the time herein limited, together with the costs of this rule, the defendant shall be at liberty to apply to this court for a modification of the amount of alimony heretofore fixed by the court according to the course of this court."

This order not having been obeyed, the respondent was taken into custody under the following additional order :

"On the motion of the complainant's solicitor this day filed in court, it is this 19th day of February, 1895, ordered that the marshal take into his custody the body of the defendant, George R. Tolman, and the same to safely keep until the further order of this court, as for a contempt in refusing to obey the order passed herein on the 16th day of February, 1895.　　　A. B. HAGNER, *Associate Justice.*"

A petition for a writ of *habeas corpus* was immediately filed and granted, but on hearing before Mr. Justice McComas, the writ was discharged and the petitioner remanded to the custody of the warden. From this judgment the appeal has been taken, and it seems that petitioner has been admitted to bail pending the same.

*Mr. Henry E. Davis* for the appellant :

1. The extent of the inquiry on *habeas corpus* in such a case as this is definitely settled. If a person be in detention under an order void on its face, he must be discharged ; similarly, if he be detained under an order beyond the power of the court making it. In cases of the latter class, as a general rule, no inquiry can be made into the regularity of

the proceedings or the propriety of the judgment on the facts ; the power of the court to make the order is the only question. *Ex parte Perkins*, 18 Cal. 60. It is the power of the court to render the particular judgment complained of that may be inquired into. *People* v. *Liscomb*, 60 N. Y. 559; *In re Snow*, 120 U. S. 274; *Ex parte Lange*, 18 Wall. 163.

2. The order of commitment in this case is void. It is a commitment "until the further order of the court." This is void, as has been expressly decided in this jurisdiction. *In re Marsh*, MacA. & Mack. 32. And elsewhere, both in England and in this country. *King* v. *James*, 5 Barn. & Ald. 894 ; *Hollingshead's Case*, 1 Salk. 351 ; *Rex* v. *Hall*, 3 Burr. 1636 ; *In re Hammer*, 9 R. I. 248 ; *In re Leach*, 51 Vt. 630 ; *People* v. *Pirfenbeck*, 96 Ill. 68.

If it be said that the commitment rests on the order of February 16, the answer is that the order also is no justification of the appellant's detention.

3. It is a question how far, if at all, that order may be considered. *Ex parte Summers*, 5 Ired. L. 149 ; *Abbot*, 14 East. 1, 150–'1 ; *Ex parte Maulsby*, 13 Md. 625, and cases cited.

If the order of February 16 may not be considered, the petitioner should be discharged, because the order of February 19 is void, as above shown. If, however, the order of February 16 is to be considered, it is no justification for the appellant's detention.

4. The order of February 16 involves imprisonment for debt. Whether alimony is a debt has been much considered. In the leading case holding it not to be a debt the averments, statute law and facts were peculiar and the allotment of alimony was in lump, being a distinct part and proportion of the husband's estate. *Lyon* v. *Lyon*, 21 Conn. 185. And, apart from the language of the statute involved in the case, the court seems to have proceeded upon Blackstone's very general definition of alimony. 1 Bl. Com. 441 ; 3 Bl. Com. 94.

Other courts have held alimony not to be a debt. *Ex parte Perkins*, 18 Cal. 60 ; *Lewis* v. *Lewis*, 80 Ga. 706. On the other hand, the contrary has been held. *Coughlin* v. *Ehlert*, 39 Mo. 285 ; *Miller* v. *Clark*, 23 Ind. 370 ; *Hansford* v. *Van Auken*, 79 Ind. 302 ; *Becknell* v. *Becknell*, 110 Ind. 42 ; *Stratton* v. *Stratton*, 77 Me. 373 ; *Clark* v. *Clark*, 6 W. & S. 85 ; *Goodwillie* v. *Milliman*, 56 Ill. 523 ; *Slade* v. *Slade*, 106 Mass. 499.

Certainly alimony *pendente lite* cannot, by any proper use of language, be called, in Blackstone's phrase, an "allowance which is made to a woman for her support *out of her husband's estate*" (1 Bl. Com., 441). It is merely suit money ordered to be paid by the husband to maintain her until the court shall have decided the question of divorce or alimony, as the case may be. How such a payment can be considered otherwise than in the light of debt it seems impossible to conceive.

5. The order of February 16 is void for the same reason as the order of commitment, viz : because it specifies no time.

6. The order of February 16 is void because it does not, on its face, show a contempt of court. The order should show on its face, if such be the fact, that the question of the appellant's ability to pay was tried and decided against him, and that he was, in fact, able to pay and continuously refused. The question of ability is to be decided upon evidence, and when found should be recited as the basis of the judgment of contempt. *Ex parte Perkins*, 18 Cal. 60 ; *Ex parte Cottrell*, 59 Cal. 417, 419. Where inability to pay exists and is not willful the defendant's failure to comply with the court's order will not be deemed a contempt ; *and the defendant's account of his financial condition, when not disproved or contradicted, will be accepted as true.* *Blake* v. *People*, 80 Ill. 11 ; *Russell* v. *Russell*, 69 Me. 336 ; *Newhouse* v. *Newhouse*, 14 Oreg. 290 ; *O' Callaghan* v. *O' Callaghan*, 69 Ill. 552. See also *Slade* v. *Slade*, 106 Mass. 499 ; *Wightman* v. *Wightman*, 45 Ill. 167.

*Mr. O. D. Barrett* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The only question for consideration in a proceeding of this nature is as to the jurisdiction of the court whose order is sought to be vacated. Had that court any jurisdiction in the premises at all? If so, did it clearly exceed that jurisdiction in the order complained of? *Ex parte Kearney,* 7 Wheat. 38; *Ex parte Lange,* 18 Wall. 163, 176; *Ex parte Rowland,* 104 U. S. 604, 612; *In re Snow,* 120 U. S. 274, 285; *In re Ayres,* 123 U. S. 443; *Ex parte Terry,* 128 U. S. 289; *In re Hans Nielsen,* 131 U. S. 176; *In re Wilson,* 140 U. S. 575.

2. It is conceded, as a matter of course, that the Supreme Court of the District of Columbia had jurisdiction to pass the order requiring the payment of the alimony in the amounts and at the times specified, which is the foundation of the rule to show cause and the order of commitment. But it is earnestly contended that the court had no jurisdiction to enforce that order by committing the party to jail for refusing to obey it, because it is in effect "imprisonment for debt." These words have a well defined and well known meaning, and have never been held to apply to proceedings for the punishment of technical contempts, and rarely, if ever, to process to enforce the performance of a specific decree in equity requiring action at the hands of the party to render them effectual.

It is said, however, that an order to pay money is exceptional, and that it creates a *debt* which can only be enforced like a similar judgment at law by execution against the property of the party. In this view we cannot concur. A final decree in equity ascertaining and declaring a specific sum of money to be due as a debt, by one party to the other, is quite different from an order to a trustee or receiver to pay over money in his hands, or to a husband to pay alimony to his wife out of property in his exclusive

possession, or of money or income of which he is in the regular receipt at stated periods. The allowance of alimony is not in the nature of an absolute debt. It is not unconditional and unchangeable. It may be changed in amount, even when in arrears, upon good cause shown to the court having jurisdiction. The fact that such a decree may be sued upon under certain circumstances, or enforced, as is the case in some jurisdictions, by either execution or attachment of the person, or both, does not, in our opinion, change its essential character.

It is the judicial ascertainment and declaration of a specific duty which the husband owes to the wife, in accordance with the law of that favored relation, and is akin to the ordinary decree for specific performance. In the apt language of the Supreme Court of California : " The husband is bound to support the wife, yet this duty is an imperfect obligation which is not technically a debt. He does not owe her any specific amount of money, but he owes a duty to her which may be enforced by the order of the court compelling him to pay her alimony." *Ex parte Perkins*, 18 Cal. 60. It was also well said by the Supreme Court of North Carolina, that " It is an order of a competent court only to be enforced as are other judicial commands, when necessary, by process of attachment against the person. The power to award the process is inherent in the court, essential to the exercise of its jurisdiction and the maintenance of its authority." *Pain* v. *Pain*, 80 N. C. 322, 325.

The following well considered cases assert substantially the same doctrine. *Ballard* v. *Carpenter*, 2 Metcalf (Ky.) 412 ; *Dwelly* v. *Dwelly*, 46 Me. 377 ; *Russell* v. *Russell*, 69 Me. 336 ; *Petrie* v. *People*, 40 Ill. 334 ; *Blake* v. *People*, 80 Ill. 11 ; *Lewis* v. *Lewis*, 80 Ga. 706 ; *McClung* v. *McClung*, 33 N. J. Eq. 462 ; *Park* v. *Park*, 80 N. Y. 156 ; *Strobridge* v. *Strobridge*, 21 Hun, 288 ; *Haines* v. *Haines*, 35 Mich. 138 ; *Daniels* v. *Lindsey*, 44 Iowa, 567 ; *Slade* v. *Slade*, 106 Mass. 499 ; *Menzie* v. *Anderson*, 65 Ind. 239.

The only case holding that attachment of the person for non-payment of alimony is virtually imprisonment for debt that has come under our observation, is *Coughlin* v. *Ehrlert*, 39 Mo. 285. In that case, however, it was admitted that if it could be shown that the defendant had certain money in his possesion he might be attached as for contempt for disobedience of an order to pay it over.

The facts of this case strongly illustrate the justice and reason of the demand that courts of equity shall not, by construction, be shorn of the power to compel obedience to their decrees awarding alimony. The appellant admits the receipt of an ample salary. He is probably in receipt of additional revenue from professional labors. He has no one else with whose support he is lawfully chargeable. He has no property subject to execution and his salary cannot be reached by process of garnishment. To deny the right to coerce him into performance is to deny all right of redress to the wife. Why go through the idle ceremony of ordering payment if, with ample means at his command, he may treat the order with contemptuous defiance ?

3. The answer of the respondent to the rule to show cause was not conclusive, and the court was not bound by the allegations therein, or the express denial of a willful intent to disobey its order. The answer may be conclusive, probably is, in the ordinary proceeding for what has been called criminal contempt, where the sole object is the punishment of the offender. But in equity, where the object is to compel performance of a decree in aid of a private right, and the punishment of the offender may or may not be made incidental thereto, the answer is not conclusive and the court may look beyond it if justice demands. *Underwood's Case*, 2 Humphreys (21 Tenn.) 46 ; *State* v. *Harper's Ferry Bridge Co.*, 16 W. Va. 864, 873 ; *In the matter of Pittman*, 1 Curtis C. C. 186, 190 ; *United States* v. *Mann*, 2 Brock. 9 ; *State* v. *Matthews*, 37 N. H. 450 ; *Buck* v. *Buck*, 60 Ill. 105 ; *Crow* v. *State*, 24 Tex. 12 ; *Albany City Bank* v. *Schermerhorn*, 9 Paige Ch. 372.

If an answer should show clearly the inability of a party to comply with the order, and there is nothing to the contrary, he ought to be discharged. It cannot be justly said that the respondent was denied a hearing in this case. His capacity to pay had been inquired into and passed upon when the original order was made. The answer to the rule showed no diminution of his means or resources since that time. Nearly three years had elapsed during which his salary continued unabated.

In answer he says that during the interval between the passing of that order and its affirmance in this court, November 6, 1893, he received about $3,000 by way of salary; that he spent a part (without saying how much) in his own support and that of a parent " in part dependent upon him;" and $650 in traveling for his health; and that he also consumed some of it in buying needed books and instruments. In the second answer he makes no account of the money received during the year 1894. The order which he disobeyed did not require him to pay the whole amount in arrears, but the sum of $600 only, and was accompanied with permission, upon payment thereof, to apply for a reduction of the amount named in the original order. The court was dissatisfied, and justly so, with this answer. It gave no reasonable excuse for disobedience of the order.

4. The authorities are not uniform on the question whether an order of commitment should recite the facts necessary to show that the court had jurisdiction to inflict the penalty. By some this is regarded as essential to a legal commitment. *Ex parte Field,* 1 Cal. 187; *Commonwealth* v. *Perkins,* 124 Pa. St. 36; *Ex parte Robertson,* 27 Tex. Ct. App. 628; *Fischer* v. *Longbein,* 103 N. Y. 84. This would seem to be the better practice at least.

Other authorities hold that where the order proceeds from a court of general jurisdiction it is not essential that the facts be recited therein. *In re Eaton,* 51 Fed. Rep. 804; *Ex parte Summers,* 5 Ired. 146; Church on Habeas Corpus, secs. 316 and 336, and cases cited. That question

need not be decided now, however. Conceding that the order of commitment should show the ground upon which it rests, we think that has been sufficiently done. The proceedings which form part of the record show plainly that the commitment was had for disobedience of the order to pay alimony, and for nothing else. This is a sufficient compliance with the rule. *Fischer* v. *Hays*, 6 Fed. Rep. 63 ; *Fischer* v. *Longbein*, 103 N. Y. 84, 95.

5. The last question to be considered arises also on objection to the terms of the order of commitment. It is contended that it stands as an unqualified order of imprisonment at the pleasure of the court. Whilst such an order has the sanction of very high authority (Kent, C. J., in case of *J. V. N. Yates*, 4 Johns. 314, 373), we think the better and safer rule, and one certainly more in accord with the spirit of our institutions, is, that the order of commitment to jail for contempt should be specific and certain in its terms, and not for a period so indefinite as the mere pleasure of the court. *People* v. *Perfenbrink*, 96 Ill. 68 ; Rapalje on Contempt, sec. 129 and cases cited ; Church on *Habeas Corpus*, sec. 334. The rule, however, applies in its strictness to cases of technical contempt where the imprisonment is for an offence committed against the dignity of the court ; that is to say, where it is inflicted as punishment, and not to compel performance of a specific order or decree.

The order in this case, though subject to criticism because it does not in express terms recite that the confinement shall be until the performance of the decree, cannot be said to be void. That it is necessarily upon that condition, we think, appears clearly enough from the record of the entire proceedings. Taking these proceedings in connection with the final order of commitment, in which they terminated, there can be no reasonable doubt as to the true intent and meaning of the order. It cannot be declared void for want of mere technical accuracy in its recitals, when the defects therein are supplied by the record.

After careful consideration of all the errors assigned, we

find no error in the record that would justify us in reversing the judgment remanding the appellant to the custody of the warden, and it is therefore *affirmed*.

*Judgment affirmed.*