HENRY PETRIE

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. TEMPORARY ALIMONY—*pendente lite*. The courts of chancery in this State, having the power to grant divorces, have, also, the incidental power to allow temporary alimony *pendente lite*.

2. Alimony *pendente lite*, is a common law right. It was an established right in England, when we adopted the common law. It is no less a common law right because it grew up under the usages of the Ecclesiastical Court, and the courts of chancery are bound to enforce it as much as any other provision of the common law.

3. Practice — *time for determining motions — giving time for counter proof*. Where a motion is made in a cause against a party who is in court, he cannot complain that the court proceeds to hear and determine the same without extending to him time to meet it, when he has not asked for further time to produce counter evidence, nor has even advised the court he intended to resist the motion.

4. If a party against whom a motion is made in the progress of a cause, desires to meet proof filed in support of the motion by counter evidence, and requires further time to enable him to do so, he should ask further time, and show by affidavit that he can make the proof, and that further time is necessary.

5. Attachment for contempt — *whether notice thereof is necessary*. Where the defendant in a suit in chancery for divorce, neglects to obey an order therein to pay alimony *pendente lite*, an attachment may be issued against him for contempt, without any notice to him that an attachment would be asked, or any rule to show cause why it should not be issued.

Appeal from the Superior Court of Chicago.

In February, 1865, Martha A. Petrie exhibited her bill in chancery in the court below, against Henry Petrie, her husband, for a divorce. The defendant demurred to the bill. The complainant also filed her petition for an allowance of temporary alimony for support and expenses of the suit.

The motion for alimony and the demurrer to the bill were heard together on the 21st of March, 1865.

The demurrer was overruled, and the defendant ordered to pay fifty dollars temporary alimony by the following Friday, and fifty dollars by the first day of the next term of court.

On the 7th of April following, the defendant was brought into court under a writ of attachment stated therein to have been issued "for a contempt of court in not obeying a certain order of court entered of record in a certain cause now pending in said court, on the chancery side thereof, wherein Martha A. Petrie is complainant, and said Henry Petrie is defendant; he having been duly served with a certified copy of said order," dated, March 25, 1865. The return of the sheriff shows defendant was arrested thereon, April 4, 1865.

A motion was then made to quash the attachment and discharge the defendant upon the grounds:

1st. Because there was no notice of motion, copy of affidavits or rule to show cause, made, served upon, or given to said defendant or his solicitors previous to issuing the same, and no notice was given of any application to the court for any order in the case, and defendant had no opportunity to controvert the affidavits, if any, filed against him. .

2d. The court had no authority or jurisdiction to make said order, or to direct the imprisonment of the defendant, or the payment of alimony, until after a final decree of divorce in the case, and said order of 21st March, and all proceedings thereunder were absolutely void and so remain.

This motion was made upon the bill, demurrer, orders of court, petition, and affidavits filed. The court overruled said objections and denied the motion. Defendant excepted—" and thereupon, on motion of complainant, without the filing of interrogatories to defendant, or other proceedings being had in the case, the court ordered defendant to be committed to close confinement in the common jail of Cook county; and a writ of attachment was allowed by, and issued out of said court against defendant, who excepted thereto."

The mandatory clause is as follows, viz. :

" Now, therefore, we command you that you take the body of the said Henry Petrie and him safely keep in your custody in the jail of said county, until he pay the said fifty dollars and the costs and expenses as aforesaid with your fees hereon or until our said court shall make an order to the contrary."

From this order the defendant appealed to this court, and now insists the rulings of the court below were erroneous : First, because he did not have an opportunity to meet the affidavits filed by the complainant in support of her motion for temporary alimony; second, because the courts of chancery in this State have no power to grant temporary alimony *pendente lite*, and, third, because the attachment for contempt could not properly issue until notice thereof had been previously given, and an opportunity for the defendant to purge himself of the alleged contempt.

Messrs. Haines & Story, for the appellant, upon the principal question, contended that the courts of chancery in this State have no power to grant an application for temporary alimony *pendente lite*, citing *Wilson* v. *Wilson*, 2 Dev. & Batt. (N. Car.) 377; *Sheldon* v. *Pendleton*, 18 Conn. 417; *Harrington* v. *Harrington*, 10 Vt. 505; *Hazen* v. *Hazen*, 19 id. 603.

Counsel urged that the courts in this State have jurisdiction in cases of divorce, only by statute. Rev. Stat. ch. "Divorces," § 1.

Jurisdiction is given specially to the Circuit Court, in chancery, in all cases of divorces and *alimony* allowed by the chapter of divorces under the practice and proceedings only of such courts. Rev. Stat. "Divorces," ch. 33 § 2.

The chapter of divorces allows alimony only when the divorce is decreed (§ 6).

But when a woman sues for a divorce the statute provides that if she is poor and unable to pay the expenses, she shall be allowed to prosecute without cost, and no fees shall be charged by the officers of the court (§ 7).

Attorneys are officers of the court, and may be compelled to act to a reasonable extent without fees, as well as any other officer of court.

The intention of the statute is clear that the party shall have no other remedy than that given by the statute, which seems to be complete for the purposes of justice.

The rules of the Ecclesiastical Courts of England do not apply in the courts of this State in proceedings for divorce. Those courts are not known to our law.

We have adopted the common law by statute, and have taken only that which is applicable to the habits and condition of our society, and in harmony with the genius, spirit, and objects of our institutions. *Boyd* v. *Sweet*, 3 Scam. 120; *Stuart* v. *People*, id. 396.

Messrs. Ward & Stanford, for the appellee.

The power to award the wife temporary alimony is an inherent power of the courts of chancery in this State. They

administer the law according to the rules and practice of the common law, except in so far as those rules have been abrogated or modified by statute.

We have adopted by express statute the common law of England, so far as the same is of a general nature, and applicable to our institutions. See ch. 62, Rev. Stat. § 1, title " Laws."

Alimony *pendente lite* was an established right in England when we adopted such portions of the common law as are included in the provisions of such statute. See *Smith* v. *Smith,* 2 Phillimore, 152; *Stone* v. *Stone,* 3 Curteis, 341; *Bird* v. *Bird,* 1 Lee, 572; 1 Chitty's Gen. Pr. 60, 61; id. 462, 463; *McGee* v. *McGee,* 10 Ga. 477.

True, it grew up under and was enforced by the Ecclesiastical Courts, but the power was expressly recognized by the law courts also. See *Wilson* v. *Smyth,* 20 Eng. Com. Law, 486; *Hunt* v. *DeBlaquere,* 15 id. 550.

In these cases the question arose upon suit brought against husband for necessaries furnished the wife pending suit for divorce. Defense, that the Consistory Court had awarded temporary alimony, which had been paid by the husband, held a good defense.

The ecclesiastical law of England is part of the common law, and is there so regarded. See Bishop, § 1, also § 9 and note 4.

In *McGee* v. *McGee,* 10 Ga., before cited, Judge NISBET delivering the opinion of the court, says: Alimony *pendente lite,* is " a common law right. It was an established right in " England when we adopted the common law. It is no less a common law right because it grew up under the usages of the Ecclesiastical Court. It is suited to our condition, and is in harmony with our institutions. Upon the subject of temporary alimony, however, our statutes are silent." Under this state of facts that court held, "that with the power to grant divorces passed the power to enforce the common law which gives to the wife temporary alimony."

In *Melizet* v. *Melizet,* 1 Pars. 78, the court says: " On general principles independent of the statute, I am convinced that

the husband, plaintiff or defendant, is obliged to pay the expenses incurred by his wife in prosecuting or defending a divorce. It is an incidental authority to the power given this court to decree a divorce." See also *Graves* v. *Cole*, 7 Harris (Pa.) 171.

It is not claimed that the American decisions are uniform upon this question, but it is claimed that the current of authority is decidedly in favor of the allowance. See Bishop on Marriage and Divorce, 3d ed. § 576, also § 398, 2d vol. Bishop on Marriage and Divorce, 4th ed., and the *numerous* cases cited in the notes thereto.

Mr. Chief Justice Walker delivered the opinion of the Court:

It is insisted that the court below erred in allowing alimony to enable complainant to employ counsel and otherwise prepare for the prosecution of her suit. The power of the court to make such an order is questioned, upon the ground that the statute regulating proceedings in divorce contains no express authority for the purpose, the statute only, in terms, authorizing the court to allow permanent alimony by the final decree. The only provision on the subject of alimony is found in the sixth and eighth sections of our statute, the former of which declares, that " When a divorce shall be decreed, it shall and may be lawful for the court to make such order touching the alimony and maintenance of the wife, the care, custody and support of the children, or any of them, as from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just; and, in case the wife be complainant, to order the defendant to give reasonable security for such alimony and maintenance; or may enforce the payment of such alimony and maintenance, in any other manner consistent with the rules and practice of the court; and the court may, on application, from time to time, make such alterations in the allowance of alimony and maintenance, as shall appear reasonable and proper."

The eighth section declares, that if upon the hearing the court shall be satisfied of the expediency of decreeing a dissolu

tion of the bands of matrimony it shall have power to do so, "and to make such order with regard to the costs as it may deem right, and also, to make such order with regard to the children (if any) and the right of alimony as it may think proper."

There seems, in the American courts, to be some conflict of authority on the question whether the courts to which jurisdiction is given over cases of divorce, in the absence of 'statutory enactment, or where, as with us, the statute only provides· for the allowance of permanent alimony on granting the divorce, have authority, as incident to the power to grant divorces, to allow alimony *pendente lite.* It was *held* in North Carolina, that as the statute made no express provision for temporary alimony, and contained no intimation of a design that the practice of the Ecclesiastical Court of England should be followed, such alimony could not be granted. *Wilson* v. *Wilson*, 2 Dev. & Batt. 377. In pronouncing this decision, however, the court expressly reserved the question whether it would give relief, where a husband was oppressively pursuing his wife, who was without means, for a divorce, until he would furnish her with funds necessary for her defense. The cases of *Harrington* v. *Harrington*, 10 Vermt. 505, and *Hazen* v. *Hazen*, 19 id. 603, are to the same effect. But the two latter cases are expressly overruled by the case of *Le Barron* v. *Le Barron*, 35 Vermt. 365, and the contrary doctrine is clearly and explicitly announced.

In New York, under a statute, it is true, which provides that the court may make an allowance to the wife, to enable her to carry on the suit, when brought for a divorce or separation, but which does not in terms extend the allowance of *ad interim* alimony, even in those cases it is held that the court has power to grant such alimony. In *North* v. *North*, 1 Barb. Ch. 244, in a suit by a husband for a divorce it was held, that the wife was entitled to an allowance from the complainant to enable her to make defense, and also to a further sum for the support of herself and her child pending the litigation. This decision was put upon the ground, that the allowance did

not depend wholly upon the statute, but upon the practice of the court as it previously existed. And Chancellor WALWORTH, who delivered the opinion in that case, said that the court had continued to allow *ad interim* alimony, in matrimonial causes, in the same manner as before. 2 Barb. Ch. Pr. 265.

In Missouri provision was made by statute for permanent alimony, and also, that the court might order any reasonable sum to be paid for the support of the wife during the pendency of *her* application for a divorce; yet in the case of *Ryan* v. *Ryan*, 9 Mo. 539, which was a suit by the *husband*, the wife was allowed alimony *pendente lite*.

In Pennsylvania, in the case of *Melizet* v. *Melizet*, 1 Parsons' Select Cases in Eq. 78, after a decree fixing the amount of alimony on a divorce, the plaintiff moved the court for a further allowance. The motion was resisted upon the ground that no such authority had been conferred by the statute. But the motion was allowed on general principles, and independent of the statute.

Without citing further authorities, we may safely say, that the general American doctrine is, that the wife may have alimony *pendente lite*, as well as money to defray the expenses of the suit, even in the absence of statutory provision to that effect, upon the principle that alimony is an incident to the divorce, and that the jurisdiction of the latter necessarily includes the power to enforce such a right, as a legal attendant upon the marital relation, under the circumstances under which the parties litigant are placed. Bishop on Marriage and Divorce, § 574.

Moreover, it will not be questioned that this right existed as a part of the common law jurisdiction, and we have expressly adopted the common law as a part of our jurisprudence. It is true that this jurisdiction was exercised in Great Britain in the ecclesiastical courts, but is none the less, for that reason, a common law jurisdiction, in harmony with our institutions, and essentially necessary to the attainment of justice.

This court has expressly said, in the case of *Harman* v. *Harman*, 16 Ill. 88, that we have adopted the common law in

relation to the causes for which a divorce may be granted, except so far as the statute has provided a different rule. And in *Hamaker* v. *Hamaker*, 18 Ill. 139, it was said the power of the courts in this State in relation to that subject, is confined to the "common law or common law and statutory causes." It must be understood, then, that we have adopted all of the incidents to the exercise of this power as exercised in the common law jurisdiction of the ecclesiastical courts in Great Britain, unless restrained by statutory enactment, as the incident will, as a general rule, always attend the principal to which it is related.

The question of jurisdiction in such cases, is fully discussed by Mr. Justice NISBET in the case of *McGee* v. *McGee*, 10 Ga. 478. In delivering the opinion of the court he said: "I see no reason why the *Superior Courts* of this State have not acquired jurisdiction over temporary alimony incidentally, as the ecclesiastical courts acquired jurisdiction over alimony." "Alimony *pendente lite* is a common law right. It was an established right in England when we adopted the common law. It is no less a common law right because it grew up under the usages of the Ecclesiastical Court. What becomes of the right in Georgia? The common law, which guaranties it, has not been repealed. It is suited to our condition, and in harmony with our institutions. We have no Ecclesiastical Court. The jurisdiction which in England belonged to that court, has been transferred here, by statute, to the Superior Courts, and the manner of exercising it pointed out. Upon the subject of temporary alimony, however, our statutes are silent. Under this state of facts, I repeat the question, what became of the right? Is it a right without a remedy? Or rather, is not the Superior Court bound to enforce it as much as any other provision of the common law? By transferring the jurisdiction over divorces to those courts, was it not the intention of the legislature that that jurisdiction should be exercised, except so far as the manner of its exercise is specially prescribed, and except so far as the common law is in conflict with the laws of Georgia, and genius of her institutions, according

to the common law? We think it was; and that with the power to grant divorces, passed the power to enforce the common law, which gives to the wife temporary alimony. This conclusion becomes irresistible, when we reflect that if the Superior Courts cannot make this provision, it cannot be made at all."

We are fully satisfied that the weight of authority as well as reason and justice all unite in support of the rule, that the Court of Chancery in this State, having power to grant divorces, has also the incidental power to allow temporary alimony *pendente lite*, and therefore, the Superior Court did not exceed its jurisdiction in granting the order complained of and assigned for error.

It is likewise urged, that the court erred in making the order for alimony *pendente lite*, because appellant did not have an opportunity to meet appellee's affidavits in support of her motion. He was in court, and we do not see that he asked time or even suggested to the court that he could meet them. If he had been able to meet appellee's affidavits he should have asked for time and shown by affidavit that he could make the proof, and that he had not had sufficient time to enable him to procure the counter evidence. But until he showed the court sufficient facts and asks for further time, he cannot complain if the court proceeded to hear the motion.

It is again objected, that the court erred in executing the decree for the payment of the alimony. That he should have been brought before the court, and interrogatories propounded and an opportunity afforded to purge himself of the contempt. It appears that the order to pay fifty dollars as temporary alimony was passed on the 25th day of March, 1865, ordering appellant to pay the money by the next Friday. It also appears that he was served with a copy of the order, but failed to make the payment. He was arrested on a writ of attachment issued out of the court, for a contempt in refusing to obey this order. He was brought into court on the 7th of April, 1865, and he then entered a motion to quash the attachment, upon the ground, that he was not served with notice of the

intention to make the motion, or with a copy of the affidavit or rule to show cause why the attachment should not issue, and because the court did not have jurisdiction to order the payment of provisional alimony.

While in the English courts the practice requires notice to be given to the opposite party, to his attorney or some officer of the court on his behalf, before any step is taken, and while in cases of this character it is perhaps the better practice, yet it has not been regarded as indispensable in our practice. After a party has been once brought into court, the presumption is that he is present and cognizant of every step taken in the cause until it is terminated, unless there has considerable time elapsed without taking any steps in the case. Here appellant had been brought into court, had entered his appearance, had filed his demurrer and resisted the motion for alimony *pendente lite* only a few days previously, and was fully aware of the order and its requirements, and that he was in default under it and subject to attachment for a contempt for a non-compliance with the order. And we must presume that he was fully aware that the motion was made for the attachment, and this being so, we see no reason to say that the court erred in having him arrested and detained until the order was complied with, or till he was otherwise legally discharged. He was in court, and had he been able to purge himself of the contempt he only had to ask the court for leave to do so, when it would have been granted.

The decree of the court below must be affirmed.

*Decree affirmed.*