Nos. 2--05--0947 & 2--05--1001 cons.          filed: 11/20/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF STEVEN RICHARD DEVORE BEST, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Petitioner and Counterrespondent-Appellant, | ) ) ) ) | |
| and | ) ) | No. 04--D--237 |
| ANGELA K. FARLOW BEST, | ) ) ) | Honorable Sarah P. Lessman and Jorge L. Ortiz, |
| Respondent and Counterpetitioner-Appellee. | ) ) | Judges, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

In consolidated appeals, petitioner, Steven Richard Devore Best, seeks review of two orders entered in this action for the dissolution of his marriage to respondent, Angela K. Farlow Best. The court entered the first order in response to petitioner's "Motion for Declaratory Judgment" (and later, an "Amended Motion for Declaratory Judgment"). In the motion, petitioner asked the court to declare the validity of the parties' antenuptial agreement and to rule that it barred any support payment and any payment of attorney fees by one party for the other. The court ruled that the agreement was valid, but held that it barred support only after a decree of dissolution or legal separation. The court further held that the agreement did not bar payment of attorney fees for proceedings other than those strictly directed to the marriage relationship. In particular, the agreement did not bar fees incurred in litigation of child custody. Petitioner challenges this

construction. We hold sua sponte that the court's entry of the declaratory judgment was error because it did not satisfy the requirement of the declaratory judgment statute (735 ILCS 5/2--701 (West 2004)) that the judgment terminate a controversy. Petitioner also challenges as contrary to the agreement an order refusing to vacate an order requiring him to reinstate respondent on his health insurance policy. Petitioner characterizes the order to reinstate insurance, correctly we deem, as an injunction. However, we hold that the trial court was correct in ruling that the agreement did not apply to interim support, and we therefore affirm the order refusing to vacate the order to reinstate insurance.

Petitioner filed a petition for dissolution of marriage on February 4, 2004, when the parties had been married about 13 months. They had a single infant child. On March 26, 2004, respondent filed a "Motion for Declaratory Judgment." As amended, it asserted that the parties had entered into an antenuptial agreement and asked the court to declare that the agreement was valid and, among other things, barred payment of support and of dissolution-related attorney fees by one spouse on behalf of the other. We will describe the language of the agreement in more detail as it becomes relevant. Respondent disputed the validity and effect of the antenuptial agreement.

The court heard testimony of both parties about the circumstances surrounding their making of the agreement. This too we will describe in greater detail later. On April 28, 2004, the court found that the agreement was enforceable and ordered petitioner to pay respondent $2,000 a month in unallocated support, as well as expenses for the marital residence, in which respondent and the child were living. The court also ruled that the bar on attorney fees applied only to fees incurred in the portion of the action that related strictly to dissolution and property division, and so did not bar fees for the custody portion of the action or for an order of protection action. It made a finding under

Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) that no reason existed to delay enforcement or appeal of the order. Petitioner moved for reconsideration.

While petitioner's motion for reconsideration was pending, the court, on respondent's motion, entered an order requiring petitioner to reinstate respondent as a beneficiary of his health insurance policy. Two months later, petitioner moved to vacate that order, "pursuant to Section 2--1401 of the Illinois Code of Civil Procedure" (735 ILCS 5/2--1401 (West 2004)), asserting that the order was contrary to the antenuptial agreement. Respondent countered that the relevant part of the agreement was applicable only when the marriage was dissolved or when the parties had legally separated. The court, on August 8, 2005, denied petitioner's motion regarding the insurance order and his motion to reconsider the declaratory judgment. In a single order disposing of both matters, it agreed with respondent that dissolution or legal separation was necessary before the relevant sections of the agreement took effect, thus extending its declaratory judgment ruling. Petitioner timely appealed the declaratory judgment order. On October 6, 2005, respondent moved in this court for permission to file a late notice of appeal of the order of August 8, 2005 (that is, the order refusing to vacate the order that petitioner reinstate respondent's health insurance). This court granted that motion.

In supplemental briefing, which we ordered because the case raises significant jurisdictional issues, petitioner asserts that the order of April 28, 2004, was final because it resolved respondent's action for a declaratory judgment. He further asserts that the August 8, 2005, order is appealable as an order refusing to dissolve an injunction.

Initially, we consider the extent of our jurisdiction. We consider first the April 28 order. We hold that the court's declaratory judgment was appealable under Rule 304(a). However, by the terms of the declaratory judgment statute, a court errs in entering a declaratory judgment when the issue

of the availability of nondeclaratory relief has fully ripened and the declaratory judgment thus does not terminate the controversy. Further, if a court enters a declaratory judgment and a Rule 304(a) finding and goes on to rule on the same issues when deciding the availability of nondeclaratory relief, it allows the parties to evade the limits on interlocutory appeals. Therefore, we review sua sponte whether the declaratory judgment satisfies the termination-of-controversy requirement of the declaratory judgment statute. We find that the declaratory judgment did not, and we therefore reverse it. Next, we consider the proper classification of the order requiring petitioner to reinstate respondent's health insurance. We conclude that, although the function of that order was to provide interim support to respondent, it required petitioner to take specific action other than the payment of money, and thus we must treat it as an injunction. We therefore have jurisdiction to review the August 8 order (denying the motion to vacate the insurance order) as an order refusing to dissolve an injunction. The August 8 order raises the issue of the correctness of the trial court's ruling that the agreement did not bar support while the parties were neither divorced nor legally separated. We hold that one must construe the agreement to apply only after the parties are divorced or legally separated. We therefore affirm the trial court's decision to leave in place the order that required petitioner to reinstate respondent's health insurance.

We start with a review of our jurisdiction over the appeal of the declaratory judgment. Our inquiry has three parts. First, we consider whether the raising of certain rights in a declaratory judgment action creates a claim whose resolution is subject to separate appeal under Rule 304(a). Although we view this issue as problematic, we conclude that a separate declaratory judgment claim exists. Second, we consider whether petitioner's filing, entitled a "motion," was sufficient to raise the claim. We hold that, although petitioner should have raised the claim by amending his petition

for dissolution, respondent waived that issue, and the claim was properly before the court. Third, we examine the mandate of the declaratory judgment statute that a court not enter such a judgment unless it terminates a part of the controversy. We hold that this requirement is critical to maintaining the jurisdictional distinction between interlocutory and final orders, and we therefore examine <u>sua sponte</u> whether the judgment met this requirement. We further hold that the judgment did not.

If an order resolves fewer than all of the claims pending in a proceeding, the order is not appealable unless the trial court makes a written finding that no just reason exists to delay appeal or enforcement of the order. 155 Ill. 2d R. 304(a). However, if an order does not resolve an entire claim, it is not a final order, and a finding under Rule 304(a) cannot confer appealability on it. See, e.g., <u>Revolution Portfolio, LLC v. Beale</u>, 332 Ill. App. 3d 595, 598-99 (2002). We therefore consider what claims were before the trial court.

If one does not consider a declaratory judgment action to raise a separate claim, then the only claim that was before the court was the dissolution claim. Typically, a dissolution action raises only one claim for purposes of Rule 304(a); all the issues decided in the action, such as support and child custody, are inseparable subparts of that claim. <u>In re Marriage of Leopando</u>, 96 Ill. 2d 114, 118-20 (1983). Thus, matters of respondent's entitlement to interim support, at least absent a declaratory judgment action, were a part of this unified dissolution claim. A judgment resolving the dissolution claim is appealable only when the court issues the dissolution judgment.

Petitioner's appeal came earlier. Therefore, the appeal was proper under Rule 304(a) only if a declaratory judgment action raises a claim separate from claims for nondeclaratory relief pertaining to the same substantive right. We hold, with some trepidation, that a declaratory judgment

action does raise such a separate claim. However, for reasons we discuss later, the seeming right to a separate appeal arising from the resolution of such a claim is largely illusory.

A "claim" for purposes of Rule 304(a) "is any right, liability or matter raised in an action." Marsh v. Evangelical Covenant Church of Hinsdale, 138 Ill. 2d 458, 465 (1990). In deciding whether a purported separate claim is a separate claim, courts have looked to whether the claims have different elements and whether the bases for relief arise from separate statutes or common-law doctrines. E.g., Rice v. Burnley, 230 Ill. App. 3d 987, 991 (1992).

By this standard, a declaratory judgment action does create a claim, albeit an unusually abstract one. The basis for declaratory relief is section 2--701 of the Code of Civil Procedure (Code) (735 ILCS 5/2--701 (West 2004)). It provides that "[n]o action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby." 735 ILCS 5/2--701 (West 2004). In other words, it provides a basis for relief when actions on most statutory or common-law grounds would be unripe. Therefore, the basis for declaratory relief arises from a source different from that for traditional, nondeclaratory relief. Further, whereas other causes of action have elements that go specifically to the availability of relief, e.g., a negligence claim requires an allegation of damages, the declaratory judgment statute requires only that the judgment terminate a part of the controversy. It is true that the declaratory judgment statute "does not create substantive rights or duties, but merely affords a new, additional, and cumulative procedural method for the judicial determination of the parties' rights." Beahringer v. Page, 204 Ill. 2d 363, 373 (2003). Therefore, a declaratory judgment claim may arise wholly out of the same preexisting right or duty as a claim for nondeclaratory relief. However, a single underlying right or duty can give rise to more than one claim.

Having concluded that a declaratory judgment action can give rise to a claim, we must next decide if petitioner properly instituted an action for declaratory judgment. We hold that he did, although he did not follow the proper procedure. Petitioner filed a petition for dissolution and then a "Motion for Declaratory Judgment." The proper method to add a cause of action in a pending proceeding is to seek leave to amend the initial pleading. 735 ILCS 5/2--616 (West 2004). However, we deem the motion to have been effective as a pleading. A pleading is "a party's formal allegations of his claims or defenses." In re Marriage of Wolff, 355 Ill. App. 3d 403, 407 (2005). The substance of petitioner's "Motion" leaves no doubt but that he was formally alleging his entitlement to declaratory relief. See People ex rel. Ryan v. City of West Chicago, 216 Ill. App. 3d 683, 688 (1991) (holding that the substance of a filing, not its title, determines how a court ought to classify it). Further, respondent waived any issue of petitioner's use of improper procedure. Respondent did not object to petitioner's failure to move to amend, but instead filed a document that is functionally an answer. Such failure to point out an error when it might be corrected generally results in waiver. See, e.g., Feret v. Schillerstrom, 363 Ill. App. 3d 534, 538 (2006).

We note the existence of precedent suggesting that a party's failure to seek the court's permission to amend a pleading is a jurisdictional flaw not subject to waiver. This court has held that "[u]nlike errors that can be waived, the error of filing a pleading without leave of the court is jurisdictional, and it is not waived if a party fails to raise it in the trial court." Goins v. Mercy Center for Health Care Services, 281 Ill. App. 3d 480, 485 (1996), citing Callaghan Paving, Inc. v. Keeneyville Construction Co., 197 Ill. App. 3d 937, 939 (1990). We note that subsequent cases in other districts have held that such an error is not jurisdictional. E.g., Ganci v. Blauvelt, 294 Ill. App. 3d 508, 515-19 (1998) (holding that the jurisdictional reasoning in Callaghan Paving, Inc. improperly

used jurisdictional rules applicable before the 1964 amendments to the judicial article of the Illinois Constitution of 1870). However, to the extent that Goins and earlier related cases remain good law, they are distinguishable because the trial court in those cases did not grant relief based on the improperly filed pleading. In Goins, for example, the court had dismissed the contested counts. Goins, 281 Ill. App. 3d at 484. Here, we deem that the trial court plainly approved the declaratory judgment action when it granted the declaratory judgment.

Although petitioner raised a declaratory judgment claim, the trial court erred in granting declaratory judgment. The trial court's consideration of the antenuptial agreement was merely an intermediate step in deciding the specific relief it would grant respondent. That circumstance should have alerted the court and the parties that something was wrong. Most causes of action require decisions on multiple intermediate issues. For example, a negligence action requires decisions on the existence of a duty, whether the defendant breached the duty, and whether the plaintiff suffered damages. See, e.g., Bajwa v. Metropolitan Life Insurance Co., 208 Ill. 2d 414, 421 (2004). A ruling on one of these issues that does not end the case, e.g., a partial summary judgment, is interlocutory and is not appealable as of right even with a Rule 304(a) finding. Morgan v. Richardson, 343 Ill. App. 3d 733, 739 (2003). An appeal is possible only under Supreme Court Rule 308 (155 Ill. 2d R. 308); if the trial court deems that early review of an intermediate issue would be valuable, and the intermediate issue is one of law, the trial court may certify the issue to the appellate court, which then has the discretion to consider the matter. 155 Ill. 2d R. 308. This structure disintegrates if a trial court can simply label any decision on an intermediate issue a declaratory judgment and make it appealable with a Rule 304(a) finding.

Any treatment of the right to appeal declaratory judgments that allows trial courts to erase many of the distinctions between final and interlocutory judgments would raise separation of powers concerns. The familiar difference in the appealability of interlocutory and final orders arises from the Illinois Constitution. Article VI, section 6, makes appeals from final judgments a matter of right. Ill. Const. 1970, art. VI, §6. By contrast, article VI, section 16, specifically vests in the Supreme Court of Illinois the authority to promulgate rules for appeals from nonfinal judgments. Ill. Const. 1970, art. VI, §16. If the declaratory judgment statute--a legislative creation--effectively allowed trial courts to make judgments on intermediate issues appealable by characterizing them as declaratory judgments, the statute would be a significant legislative encroachment on supreme court authority.

It is not the function of the declaratory judgment statute to allow appeals of intermediate issues, and the legislature built into the statute a safeguard against such use. However, the statute functions harmoniously with the rules on appealability only if courts enforce the safeguard. The statute provides that the "court shall refuse to enter a declaratory judgment or order, if it appears that the judgment or order, would not terminate the controversy or some part thereof, giving rise to the proceeding." 735 ILCS 5/2--701(a) (West 2004). Cases interpreting this requirement have held that a declaratory judgment that simply resolves an element or elements of another claim is improper. Bruemmer v. Compaq Computer Corp., 329 Ill. App. 3d 755, 765-66 (2002); Marlow v. American Suzuki Motor Corp., 222 Ill. App. 3d 722, 730 (1991). This interpretation is mandatory if declaratory judgment is not to be a means to evade the restrictions on interlocutory appeals. A declaratory judgment that decides the availability of an affirmative defense relating to another claim,

without resolving the whole of that claim, presents the same problems as a declaratory judgment that resolves an element. We therefore hold such a judgment to be improper.

The declaratory judgment here simply decided whether the antenuptial agreement provided an affirmative defense to respondent's demands for fees and support, without resolving the claims associated with those demands.[1] It therefore did not satisfy the termination-of-controversy requirement of the declaratory judgment statute and was improper. We therefore reverse the declaratory judgment.

We have raised whether the declaratory judgment satisfied the termination-of-controversy requirement <u>sua</u> <u>sponte</u> because that requirement is all that prevents the declaratory judgment from dissolving the jurisdictional boundary of what constitutes a final order. A reviewing court has a duty to consider <u>sua</u> <u>sponte</u> whether its jurisdiction is proper. <u>In re Marriage of Link</u>, 362 Ill. App. 3d 191, 192 (2005). The termination-of-controversy requirement is not jurisdictional as such, but it is so closely tied to the jurisdictional scheme that we believe that ignoring it would be inappropriate, despite the potential waiver of the issue by respondent. See <u>Feret</u>, 363 Ill. App. 3d at 539 (noting that the doctrine of waiver is a limitation on the parties, not the reviewing court).

Petitioner asserts that precedent approves the practice of courts issuing declaratory judgments on antenuptial agreements in conjunction with dissolution actions. We agree that case law shows that parties have obtained such judgments without challenge; however, the reviewing courts involved

---

[1]Although the antenuptial agreement was designed to resolve also certain nondissolution issues, such as inheritance rights, no actual controversy existed about these issues. The existence of an actual controversy is a further requirement of section 2--701. 735 ILCS 5/2--701(a) (West 2004).

have not considered the consequences of a practice of allowing such judgments to go unchallenged. E.g., In re Marriage of Byrne, 179 Ill. App. 3d 944, 945 (1989). Such cases are not wrong. However, we deem the better practice to be for reviewing courts to consider the termination-of-controversy requirement sua sponte.

We turn now to petitioner's appeal of the court's denial of his motion to vacate the order requiring him to reinstate respondent on his health insurance policy. He contends that the denial is reviewable under Supreme Court Rule 307(a)(1) as an order refusing to dissolve an injunction. Official Reports Advance Sheet No. 5 (March 5, 2003), R. 307(a)(1), eff. January 1, 2003. He further contends that the court erred in finding that the antenuptial agreement did not bar interim support (including insurance). We agree that the denial was a refusal to dissolve an injunction, but we hold that the court correctly determined that the agreement did not bar interim support. We consider first the jurisdictional question of whether the order that petitioner reinstate respondent on his health insurance was an injunction, making the denial of his motion to vacate it appealable as a refusal to dissolve an injunction.

The insurance order was an injunction, although its purpose was to provide support to respondent, because it required petitioner to take a particular action, and not simply to pay money to respondent. "An injunction is 'a "judicial process operating in personam and requiring [a] person to whom it is directed to do or refrain from doing a particular thing." ' " Skolnick v. Altheimer & Gray, 191 Ill. 2d 214, 221 (2000), quoting In re A Minor, 127 Ill. 2d 247, 261 (1989), quoting Black's Law Dictionary 705 (5th ed. 1979). However, many orders, although they meet this description, are nevertheless not injunctions, because the term "injunction" is usually reserved for orders deriving from the historical powers of chancery courts. In re A Minor, 127 Ill. 2d at 261.

Thus, discovery orders and other orders relating solely to the administration of a case are not injunctions, because the court's power to issue such orders derives from the general powers of all courts to compel testimony. In re A Minor, 127 Ill. 2d at 262.

Similarly, the history of fixed-sum-per-interval support orders separates them from injunctions. The power to order such payments is not a historical power of the chancery courts. Historically, it was the ecclesiastical courts of England, rather than the chancery courts, that ordered alimony as an incident to divorce a mensa et thoro (essentially, legal separation). See Barber v. Barber, 62 U.S. (21 How.) 582, 590-91, 16 L. Ed. 226, 229 (1858). However, the ecclesiastical courts did not have the power to enforce such decrees "summarily upon the husband," so courts of equity would enforce the ecclesiastical court decrees "to the extent of what is due." Barber, 62 U.S. (21 How.) at 591, 16 L. Ed. at 229. In other words, courts of equity (chancery courts) did not order alimony, although they might enforce it. Illinois case law recognizes the same history. The Illinois Supreme Court in Petrie v. People, 40 Ill. 334, 343 (1866), held that the power to order alimony pendente lite (in other words, interim support) was vested in the chancery courts of Illinois. Nevertheless, the Petrie court recognized that the power to order alimony pendente lite historically belonged to the ecclesiastical courts of England. Petrie, 40 Ill. at 342. However, that power, as a necessary incident of the power to grant divorces, became a power of the chancery courts in most states by virtue of those courts' having replaced the ecclesiastical courts as the divorce courts. Petrie, 40 Ill. at 339, 342-43. Thus, support orders, interim and otherwise, having a distinct history of their own, are not a part of the historical powers of the chancery courts, and are not injunctions.

Although ordinary support orders are not injunctions, and although the insurance order's purpose was providing interim support, we nevertheless deem it to be an injunction. We reason that

support orders have traditionally taken the form of periodic payments, which do not intrude greatly into the affairs of the obligor. However, once the court departs from the tradition of periodic payments and orders a specific action, it risks much greater intrusiveness and, further, produces an order that we would recognize as an injunction in any other context.

Because the insurance order did not take the form of a traditional alimony order, we hold that the court drew upon its power under the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 et seq. (West 2004)) to issue injunctions. Historically, "alimony" has been an allowance. Black's Law Dictionary defines "alimony" as a "court-ordered allowance that one spouse pays to the other spouse for maintenance and support while they are separated, while they are involved in a matrimonial lawsuit, or after they are divorced." Black's Law Dictionary 73 (7th ed. 1999). Illinois case law is similar: "Alimony is an allowance in a decree of divorce, carved out of the estate of the husband for the support of the wife." Adler v. Adler, 373 Ill. 361, 369 (1940). The word "allowance" can have the sense of either a specific share (e.g., a spousal allowance from a decedent's estate) or a periodic allowance (e.g., a child's weekly allowance), but it always implies some quantity. The order here was not to pay a quantity, but to take a specific action. It therefore took the form not of a traditional alimony order, but of an injunction as described above. Section 501 of the Act specifically and separately authorizes a court to grant as temporary relief both support and injunctive relief, so interpreting the order as an injunction is consistent with the court's powers under the Act. 750 ILCS 5/501(a)(1), (a)(2)(iv) (West 2004).

We note that an order to provide support by means of some action has the potential to be much more intrusive than an order for traditional money support, so that the ability to get immediate review becomes more important than it would be with traditional support. This is not necessarily

the case here, as nothing suggests that petitioner's reinstatement of respondent's health insurance was anything more than a financial burden to him. That is, it was little more burdensome to him than would be an order that he pay additional support to her to cover her health insurance costs. However, given the complexities of health insurance, a similar order in other circumstances might impose larger burdens on a party's mode of doing business. Further, an order intended to provide a party with support could take even more intrusive forms, such as by ordering the other party to reemploy a fired spouse. The policy considerations that underlie the immediate appealability of injunctions in other kinds of cases equally call for the immediate appealability of such orders.

In our order to the parties to brief the question of jurisdiction, we asked them to consider four cases that reviewed whether certain orders under the Act were injunctions for purposes of appealability: In re Marriage of Tetzlaff, 304 Ill. App. 3d 1030, 1035-38 (1999), In re T.M., 302 Ill. App. 3d 33, 38 (1998), In re Marriage of Johnston, 206 Ill. App. 3d 262 (1991), and In re Marriage of Meyer, 197 Ill. App. 3d 975 (1990). Because these cases neither address the specific issue in this case, whether an order in injunctive form whose function is to provide support is appealable as an injunction, nor attempt to set out general rules about what orders are injunctions, we conclude that these cases provide no guidance here.

Because the order to reinstate respondent on petitioner's health insurance was an injunction, we reach the issue of whether that order was permissible under the antenuptial agreement. We conclude that the agreement is ambiguous, such that use of extrinsic evidence as an aid in interpretation is appropriate. However, we also conclude that the extrinsic evidence presented here does not resolve the ambiguity. We therefore turn to rules that assign the risk associated with otherwise unresolvable ambiguities. One of these is the familiar rule of contra proferentem, the rule

that one should construe ambiguous terms against the drafter. A more specific rule creates a presumption against the relinquishment of marital rights. Here, both these rules here cause us to interpret the agreement to allow the provision of support while a dissolution action is pending, unless the parties have legally separated. As the parties have not legally separated, the agreement does not bar the insurance order.

Antenuptial agreements are contracts, and the rules governing the interpretation of contracts apply to their interpretation. See In re Marriage of Murphy, 359 Ill. App. 3d 289, 300 (2005). A court's primary goal in the construction of a contract is to decide and give effect to the intent of the parties as it is expressed through the words of the contract. FTI International, Inc. v. Cincinnati Insurance Co., 339 Ill. App. 3d 258, 259 (2003). When a contract is unambiguous, a court must decide the intent of the parties solely from the contract's plain language. FTI International, Inc., 339 Ill. App. 3d at 259-60. A provision in a contract is ambiguous when it is susceptible to more than one reasonable interpretation, but the mere fact that the parties disagree on the interpretation does not render a provision ambiguous. Dean Management, Inc. v. TBS Construction, Inc., 339 Ill. App. 3d 263, 269 (2003). Whether a contract term is ambiguous is a question of law, and we therefore review de novo the trial court's decision on the point. In re Marriage of Hahn, 324 Ill. App. 3d 44, 47 (2001). Further, when the terms of a contract are unambiguous, construction of the contract is also a matter of law. Dean Management, Inc., 339 Ill. App. 3d at 269. However, when a trial court must use extrinsic evidence to establish the parties' intent, we will not disturb its relevant findings of fact unless they are against the manifest weight of the evidence. See K's Merchandise Mart, Inc. v. Northgate Ltd. Partnership, 359 Ill. App. 3d 1137, 1142 (2005).

When extrinsic evidence fails to resolve an ambiguity, a court may turn to the rules of last resort, the most familiar of which is <u>contra</u> <u>proferentem</u>. See <u>Farwell Construction Co. v. Ticktin</u>, 84 Ill. App. 3d 791, 798-99 (1980). "[T]he rule [of <u>contra</u> <u>proferentem</u>] is not an interpretive one at all. Instead of seeking to divine the intent of the parties, the rule merely assigns the risk of an unresolvable ambiguity to the party responsible for creating it." <u>Premier Title Co. v. Donahue</u>, 328 Ill. App. 3d 161, 166 (2002). Its use is therefore " 'a last resort which may be invoked after all the ordinary interpretive guides have been exhausted.' " <u>Premier Title Co.</u>, 328 Ill. App. 3d at 166, quoting <u>Bunge Corp. v. Northern Trust Co.</u>, 252 Ill. App. 3d 485, 493 (1993).

A more specific rule that precedent suggests, which like <u>contra</u> <u>proferentem</u> is also a rule of last resort, is the rule that "[t]he marital rights of the husband or wife will not be taken away by an ante-nuptial agreement, unless the intention to do so is clearly apparent." <u>Baughman v. Baughman</u>, 283 Ill. 55, 68 (1918); see also <u>Seuss v. Schukat</u>, 358 Ill. 27, 35 (1934); <u>In re Marriage of Cullman</u>, 185 Ill. App. 3d 1029, 1037 (1989); <u>Genung v. Hagemann</u>, 103 Ill. App. 2d 409, 414 (1968) (exemplifying more recent applications of this rule). An early case suggests that this rule is a true rule of construction that a court is to apply before considering extrinsic evidence: "the marital rights of a husband or wife in the estate of the other will not be taken away by an ante-nuptial contract, unless the intention to do so is clearly apparent <u>from</u> <u>the</u> <u>contract</u>." (Emphasis added.) <u>Dunlop v. Lamb</u>, 182 Ill. 319, 324 (1899). However, some later cases, including <u>Genung</u> and <u>Baughman</u>, leave open the possibility that extrinsic evidence might provide the required clarity. We structure our analysis to treat this rule as one of last resort. Nevertheless, because the extrinsic evidence here does not resolve the ambiguity in the agreement, we would reach the same result applying the rule at either stage of the analysis.

Turning to the specifics of the agreement, we deem that the agreement's bar on support, applicable when the parties are "separate[d]," is ambiguous about whether it is applicable when the parties have simply ceased to cohabit. We further hold that the extrinsic evidence is not helpful to resolve this ambiguity. Therefore, we use the rules of last resort to resolve which of the reasonable readings of "separate" is best. We conclude that "separate[d]" refers to when the parties are legally separated. To show why this is so, we must consider the terms of the agreement in greater detail.

In the section headed "Waiver of Spousal Support," the agreement provides:

"In the event the parties separate or the marriage is dissolved, each party understands and agrees to waive, relinquish and release the other from any duty or obligation to support the other in any fashion or manner whatsoever, which duty or obligation to support such other party may otherwise have arisen but for this agreement. No claim or demand for such support shall be made, now or in the future."

This section concludes with a clause allowing limited support if a party would suffer hardship. In the section headed "Insurance," the agreement provides:

"In the event that the parties separate or the marriage contemplated is dissolved, the parties mutually agree that neither shall be responsible for maintaining any policy of insurance for the benefit of the other. Said policy(ies) of insurance shall include, without limitation, health, life, and automobile, etc."

The word "separate" in the two "In the event" clauses is ambiguous because one could reasonably understand it as referring to either a legal separation[2] or a cessation of cohabitation. In

---

[2]The phrase "legal separation" is itself susceptible to more than one construction. Plainly, it includes separation by court order (as under section 402 of the Illinois Marriage and Dissolution

ordinary use, "separate" has several relevant meanings.  Merriam-Webster's Collegiate Dictionary lists as meanings of "separate" "to part by a legal separation," "to sever conjugal ties with, " and "to cease to live together as a married couple."  Merriam-Webster's Collegiate Dictionary 1064 (10th ed. 2001).  Any of these definitions is reasonable in the immediate context.  The parties could reasonably have agreed to support one another only while the marriage is intact to the extent that the parties are cohabiting or living together as a married couple.  However, they could also reasonably have intended to exclude support only under a decree of separation or dissolution.

We have looked to other parts of the agreement for indications of how we should resolve the ambiguity, but we deem the result of that effort to be inconclusive.  See Fontana v. TLD Builders, Inc., 362 Ill. App. 3d 491, 510-11 (2005) (the parties' intent is "best *** determined by considering the contract as a whole, reviewing each part in light of the others").

Petitioner argues that the sentence "No claim or demand for such support shall be made, now or in the future" in the waiver of spousal support section bars any interim support.  We disagree.  We hold that the word "such" refers only to the support that the agreement bars.

The first part of the waiver of spousal support section has two sentences.  We can paraphrase the first as:  "If the parties divorce or separate, they waive any duty of support that would have arisen but for the agreement."  We can paraphrase the second as:  "At no time shall a party demand such support."

---

of Marriage Act (750 ILCS 5/402 (West 2004))).  However, one might reasonably deem it to include separation that occurs according to the terms of a formal separation agreement.  The facts here do not require us to decide the proper construction, as nothing suggests that the parties had a formal separation agreement.

Petitioner suggests that "such support" means any support available but for the agreement. "Such support" would thus mean any support at all, presumably excepting the hardship support, which one could understand to be a right created by the agreement. We will call support that would exist but for the agreement--the normal support rights of a spouse--ordinary support. Under the reading suggested by petitioner, we would paraphrase the first sentence as "The parties waive the right of ordinary support in case of divorce or separation" and the second as "Neither party will ever make a claim for ordinary support." In this reading, the sentences contradict each other on whether a right to ordinary support exists outside divorce or separation.[3] In construing contracts, we disfavor readings that produce conflicts between parts. Snelten v. Schmidt Implement Co., 269 Ill. App. 3d 988, 993 (1995). We believe this rule applies with particular force to consecutive sentences.

An alternative reading avoids this problem. We can read "such" as referring in a loose way to the entire previous sentence. That is, the parties shall not make claims for ordinary support (if such claims arise in the event of divorce or separation). In such a reading, the second sentence is a kind of intensification of the first: "The parties waive ordinary support if they divorce or separate. Moreover, the parties will not make a claim for ordinary support (if they divorce or separate)." Although we are certain that a grammarian could object to much in this second construction, we are

---

[3]Even if one read "separate" broadly to refer to any cessation of cohabitation, enforceable rights to ordinary support could still potentially be at issue if a spouse became disabled and the guardian had to decide whether to support the other spouse. It might also be at issue if a spouse sought support under section 214(b)(12) of the Domestic Violence Act (750 ILCS 60/214(b)(12) (West 2004)).

also certain it is preferable to a reading in which consecutive sentences contradict one another. However, even under that reading, the ambiguity as to the meaning of "separate" remains.

When a contract is ambiguous, a court should consider extrinsic evidence as a guide to its interpretation. We therefore review the evidence that the parties presented to the trial court about the making of the agreement. We conclude that the extrinsic evidence fails to resolve the ambiguity regarding the availability of interim support.

The evidence showed that respondent had a daughter from a previous relationship; respondent had been involved in a custody battle for her daughter and had an order of protection against her daughter's father. Respondent had told petitioner about this part of her life before the two executed the agreement. Petitioner had been married twice before. His second divorce had involved much litigation and had been financially burdensome. He testified that he was particularly concerned that he not have to pay a spouse's attorney fees in another divorce and about respondent's ability to damage his credit rating. Petitioner's attorney drafted the agreement, and respondent reviewed it with her attorney. Both parties testified that petitioner would not marry without the agreement because he needed to protect his family's interests. Respondent testified that she did not discuss the terms of the agreement with petitioner (or his lawyer) before the two executed it. However, petitioner testified that he told respondent that he did not want to pay her attorney fees in a custody dispute.

This evidence is sufficient to show that the parties most likely shared an understanding that the agreement was intended to limit petitioner's financial burdens if the marriage failed, a goal the agreement will achieve even under a narrow interpretation. However, the only evidence of the parties explicitly discussing what the terms would mean relates to the provisions regarding attorney

fees. The evidence contains nothing suggesting that the parties had a specific understanding about the availability of interim support or that the support for which the agreement provided to prevent hardship was to be the sole support available.

Because the extrinsic evidence does not resolve the ambiguity, we look to the rules of last resort to decide which of the possible meanings of "separate" is preferable. Foremost in leading us to conclude that we should read "separate" in a narrow sense is the rule that one should not read an antenuptial agreement to take away marital rights unless the intention to do so is clearly apparent. For all the reasons we have discussed, no such intent is clear. Further, the rule of contra proferentem is applicable here. The evidence shows that petitioner drafted the agreement, so we allow him to bear the risk of any unresolvable ambiguity. We therefore read "separate[d]" narrowly to mean legally separated.

For the reasons discussed, the agreement did not bar support to respondent if the parties were not divorced or legally separated. Here, the record shows only that the parties maintained different residences as the result of an order of protection obtained by respondent. We do not construe that circumstance as being the equivalent of a legal separation. Indeed, we would have serious public policy reservations about an agreement that purported to restrict support while individuals were living apart as the result of such an order. Further, petitioner does not ask us to interpret the circumstances in such a way. Therefore, the parties were not "separate[d]" within the meaning of the agreement, and the bar on support (including insurance) in the agreement was inapplicable. The trial court did not err in entering or retaining the insurance order.

For the reasons given, we reverse the circuit court of Lake County's grant of declaratory judgment, but we affirm its refusal to vacate the injunction ordering petitioner to reinstate respondent's health insurance.

-21-

Nos. 2--05--0947 & 2--05--1001 cons.

No. 2--05--0947, Reversed.

No. 2--05--1001, Affirmed.

GROMETER, P.J., and BOWMAN, J., concur.