FOURTH DIVISION
March 6, 2008

No. 1-07-2940

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit |
| | ) | Court of Cook County, |
| JODY ROSENBAUM-GOLDEN, | ) | Domestic Relations Division |
| | ) | |
| Petitioner-Appellee, | ) | No. 04 D 1240 |
| | ) | |
| v. | ) | Honorable Charles Winkler, |
| | ) | Judge Presiding |
| BRUCE P. GOLDEN, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

JUSTICE MURPHY delivered the opinion of the court:

Petitioner, Jody Rosenbaum-Golden, and respondent, Bruce Golden, were married on December 10, 1989, and dissolution proceedings began in February 2004. During the pendency of the proceedings, the trial court awarded petitioner $150,000 in interim attorney fees pursuant to section 501(c-1) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/501(c-1) (West 2004)). Respondent refused to pay the interim award because a premarital agreement between the parties provided that petitioner and respondent waived their rights to attorney fees. The trial court found respondent in contempt of court. Respondent appeals.

I. BACKGROUND

No. 1-07-2940

Respondent and petitioner, represented by separate attorneys, entered into a premarital agreement on December 9, 1989. At the time, petitioner was 35 years old and respondent was 46; both were attorneys. They married the next day and had a daughter in 1993. On February 5, 2004, petitioner filed a petition for dissolution of marriage, citing irreconcilable differences.

On September 21, 2007, petitioner filed a petition pursuant to section 501(c-1) seeking $150,000 in interim attorney fees. In the petition, petitioner alleged that her prior and current attorneys had been paid approximately $388,500 to date: $330,000 in interim fees and $58,500 that she paid her attorneys. Of those interim fees, respondent was ordered to pay $149,578.99 on May 1, 2006, but did not do so until he was held in indirect civil contempt. He was ordered to pay an additional $100,000 on December 6, 2006, but did not do so until March 2007, when his interlocutory appeal was dismissed.

She further contended that respondent has paid, or was granted leave to pay, his attorneys $735,000, including a $100,000 initial retainer to his current attorneys. According to the petition, on October 26, 2006, respondent testified that he paid the following: $11,750 to Joel Brodsky; $43,600 to Audrey Gaynor; $7,570 to the Law Offices of Wes Cowell; $35,249.80 to Schiller, DuCanto & Fleck; and an additional $100,000 to his current attorneys. Furthermore, respondent was granted leave to pay his current attorneys an additional $295,000 on December 13, 2006. The petition also relies on respondent's Rule 13.3.1 (Cook Co. Cir. Ct. R. 13.3.1 (eff. January 1, 2003)) disclosure statement, which showed a number of expenditures totaling $585,500 for "divorce legal fees."

The supporting records assembled by the parties included neither the transcript of the proceedings on October 26, 2006, nor the order entered on December 13, 2006.

In her petition, petitioner also argued that she had been working as a full-time teacher, with a salary of $43,000 a year, but was not rehired for the 2007-08 school year and was currently a substitute teacher. She later testified that she would begin a new job as a kindergarten teacher at the end of October 2007, at approximately the same salary as her previous teaching job. Respondent "operates a real estate listing business and earns substantial income from investments." She further stated that two months before she filed her petition for dissolution, the couple had $2.5 million in joint bank accounts. However, those joint accounts no longer existed, and of the funds that existed as of December 2003, she only withdrew approximately $201,000.

In his response to petitioner's petition, respondent argued that the petition was barred by a provision of their premarital agreement that addresses attorney fees arising out of dissolution proceedings. Paragraph 4(d) of the premarital agreement provides as follows:

"Bruce and Jody both release and waive any and all right to counsel fees, accounting fees or other expenses relating to the separation of the parties or termination of their marriage, except that (i) Bruce agreed that he shall bear 50% of the cost of accounting fees or other expenses incurred by Jody, subject to a maximum of $15,000, and (ii) either party shall be responsible for any such fees or expenses of the other party created by dilatory or evasive action as determined by a court of competent jurisdiction."

On July 11, 2007, the trial court found that respondent had been making "selective disclosures":

"Clearly, we have two years of undisclosed income, no attempt being made to inform this Court as to what he earned during those years from the business that he has maintained since about '02 up to the present time, that is, the For Sale By Owner using the internet to promote it. He's active in it today. He's told us what he's earned so far this year. I have serious reservations about whether or not he is telling me everything predicated on what I have heard before. *** Bruce has, in my opinion, a credibility issue, a serious one. I am not able to determine at this time exactly where he is at with his income."

On October 12, 2007, the trial court granted petitioner's interim fee petition and ordered respondent to pay petitioner's counsel $150,000 by October 26, 2007. The court noted that respondent's responsive pleadings "failed to inform the Court of all the payments he has made to his attorneys as mandated by statute, again manifesting his continued selective disclosure of information and documents during this proceeding." It further held that it had already found the marital settlement agreement to be valid; however, it ruled that "to enforce the provision that Jody pay her own fees, in light of the law that now governs divorce cases and the fact that respondent has almost all the money that at one time was held in joint tenancy by the parties, would be contrary to the law and unconscionable." The trial court had previously noted that "the interim fees are going back into the pot as part of the advancement on the marital estate."

When respondent failed to pay the $150,000, the trial court found him in indirect civil contempt of court and ordered that he remain incarcerated until he pays petitioner's attorneys

No. 1-07-2940

$150,000, as ordered on October 12, 2007. Pursuant to respondent's emergency motions, this court allowed respondent to post a bond and stayed the enforcement of the October 26, 2007, order pending appeal.

II.  ANALYSIS

A. Motions Taken With the Case

On December 20, 2007, the day before his reply brief was due, respondent filed an "emergency motion" for leave to comply with Supreme Court Rule 19 (210 Ill. 2d R. 19) *instanter*, which we took with the case.

Rule 19 provides that when the constitutionality of a statute is raised and the State is not already a party, the litigant raising the constitutional issue "shall serve an appropriate notice thereof on the Attorney General." 210 Ill. 2d R. 19(a). The notice must be "served at the time of suit, answer, or counterclaim, if the challenge is raised at that level, or promptly after the constitutional or preemption question arises as a result of a circuit or reviewing court ruling or judgment." 210 Ill. 2d R. 19(b). The purpose of the notice is to afford the state the opportunity to intervene in the case to defend the challenged law. 210 Ill. 2d R. 19(c).

Strict compliance with supreme court rules is generally required. These rules "are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written." *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). However, the appellate court has the discretion to permit late compliance with Rule 19 and address the constitutional issue if the purpose of the rule has been served. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 116 (2004).

-5-

We grant respondent's motion for leave to comply with Rule 19. Although respondent failed to give the Attorney General notice when he raised the constitutionality of section 501(c-1) in response to petitioner's petition for rule to show cause regarding his refusal to pay interim fees pursuant to an earlier order, petitioner complied with Rule 19 by sending notice. The Attorney General declined to participate, and the trial court rejected respondent's constitutional arguments on June 22, 2006. Respondent sent the Attorney General notice on December 19, 2007, informing her that this appeal involves the constitutionality of section 501(c-1) and that the briefing in this matter has been expedited. The Attorney General has not yet elected to intervene in this court. See 210 Ill. 2d R. 19(c). We find that the purpose of Rule 19 was fulfilled when the Attorney General "was offered and declined an opportunity to participate" in both the trial court and on appeal. *Stokovich*, 211 Ill. 2d at 119.

We also took with the case petitioner's motion to strike portions of respondent's opening brief and supplemental record, which he prepared pursuant to Supreme Court Rule 328 (155 Ill. 2d R. 328). Petitioner argues that several documents were improperly included in respondent's record because they were not admitted as trial exhibits. These include a Northern Trust bank statement, Chase bank statements, and a letter from petitioner's counsel to respondent's counsel. Respondent admits that these documents were not admitted into evidence. Rule 328 provides that a supplemental record should contain the "trial court record"; Rule 321 provides that the common law record "includes every document filed and judgment and order entered in the cause and any documentary exhibits offered and filed by any party." 210 Ill. 2d Rs. 328, 321. Because the Northern Trust statement, Chase bank statements, and letter from petitioner's counsel were

not admitted as trial exhibits, we strike the documents from his supporting record and any references thereto from his briefs.

In addition, petitioner argues that a reference to a Web site in footnote 2 of respondent's brief should be stricken because the information contained in the Web site was not part of the trial record. Respondent responds that we can take judicial notice of pay schedules published by the Chicago Public Schools pursuant to section 8-1001 of the Code of Civil Procedure (735 ILCS 5/8-1001 (West 2004)). However, the link to which respondent directs this court does not work, and we cannot determine what the page contained. Accordingly, we strike references to the Web site from respondent's briefs.

Finally, petitioner objects to respondent's citation to C154-156 and C168 as support for his allegation that petitioner is entitled to a distribution of her mother's estate in the amount of $103,000, as those portions of the record do not contain any testimony or admitted trial exhibit as support for his allegations. Respondent responds that he erroneously cited those pages and redirects this court to C136, C155, and C174. Because these references are to pleadings filed in the trial court, we decline to strike them from his brief.

In summary, we grant respondent's motion for leave to comply with Rule 19 and grant in part and deny in part petitioner's motion to strike portions of respondent's supplemental record and briefs.

### B. Whether the Premarital Agreement Controls

Respondent first argues that the trial court erred in awarding $150,000 in interim attorney fees pursuant to section 501(c-1) because the terms of the premarital agreement control. Paragraph 4(d) of the premarital agreement provides that the parties "release and waive any and

all right to counsel fees." Petitioner responds that paragraph 4(d) does not bar interim attorney fees pursuant to section 501(c-1).

Prenuptial agreements are contracts, and the rules governing the interpretation of contracts apply to their interpretation. *In re Marriage of Best*, 369 Ill. App. 3d 254, 265 (2006). "A court's primary goal in the construction of a contract is to decide and give effect to the intent of the parties as it is expressed through the words of the contract." *Best*, 369 Ill. App. 3d at 266. "When a contract is unambiguous, a court must decide the intent of the parties solely from the contract's plain language." *Best*, 369 Ill. App. 3d at 266.

Similarly, the goal of a court when construing a statute is to ascertain the legislature's intent, "and the surest indicator *** is the language in the statute." *Department of Public Aid ex rel. Schmid v. Williams*, 336 Ill. App. 3d 553, 556 (2003). "To this end, the court may consider the reason and necessity for the statute and the evils it was intended to remedy, and will assume that the legislature did not intend an unjust result." *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309 (2001). A court may not supply omissions, remedy defects, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute. *Beyer*, 324 Ill. App. 3d at 309-10. "If the language of the statute is clear, its plain and ordinary meaning must be given effect without resorting to other aids of construction." *Beyer*, 324 Ill. App. 3d at 310.

In 1997, the legislature amended the Illinois Marriage and Dissolution of Marriage Act, "thereby creating a new regime governing the award of attorney fees." *Beyer*, 324 Ill. App. 3d at 310, citing Pub. Act 89-712, eff. June 1, 1997. Before the amendment, "section 508 alone governed attorney fee awards, including 'temporary' fee awards" (*Beyer*, 324 Ill. App. 3d at

310), and provided as follows: "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay *** reasonable *** attorney's fees necessarily incurred or, for the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal representation, expected to be incurred by any party ***." 750 ILCS 5/508(a) (West 1996). The statute did not provide that a temporary award of fees was without prejudice or an advance against the marital estate.

The 1997 amendments introduced a separate, independent provision to govern "temporary" or "interim" fee awards to enable the petitioning party to participate adequately in the litigation. 750 ILCS 5/501(c-1) (West 2004). Section 501(c-1)(2) provides that an interim award shall be without prejudice as to any final allocation or claim of right of party or counsel. 750 ILCS 5/501(c-1)(2) (West 2004). Subsection 501(c-1)(2) specifically provides that, unless ordered by the trial court at the final hearing, a subjection 503(j) hearing, or a subsection 508(c) hearing, "interim awards, as well as the aggregate of all other payments by each party to counsel and related payments to third parties, shall be deemed to have been advances from the parties' marital estate." 750 ILCS 5/501(c-1)(2) (West 2004). Furthermore, "[a]ny such claim or right may be presented by the appropriate party or counsel at a hearing on contribution under subsection (j) of Section 503 or a hearing on counsel's fees under subsection (c) of Section 508." 750 ILCS 5/508(c-1)(2) (West 2004). Section 501(c-1) applies to any dissolution of marriage case pending on or after June 1, 1997. 750 ILCS 5/501(c-1)(4) (West 2004).

When the trial court ordered respondent to pay interim fees pursuant to section 501(c-1), it did not violate the premarital agreement, as the $150,000 in interim fees that the trial court awarded and that respondent refused to pay constituted an advance against the marital estate.

750 ILCS 5/501(c-1)(2) (West 2004); *Beyer*, 324 Ill. App. 3d at 314, quoting 750 ILCS 5/501(c-1)(2) (West 1998) (section 501(c-1)(2) creates a presumption that " 'interim awards' are deemed to be 'advances from the parties' marital estate' "); *In re Marriage of Johnson*, 351 Ill. App. 3d 88, 97 (2004) (trial court can undo interim awards); *In re Marriage of DeLarco*, 313 Ill. App. 3d 107, 112 (2000). Paragraph 4(a) of the agreement states that, except "as provided in Section 2(d)(ii) and unless Bruce and Jody agree otherwise, Marital Property shall be divided equally." We agree with petitioner that when the trial court ordered respondent to pay interim attorney fees, it simply ordered him to pay her "a portion of the funds to which she is already entitled under the Premarital Agreement's requirement that the parties divide marital property equally, in the form of a payment to her attorneys rather than to her directly."

Strong policy considerations underlie our decision that the premarital agreement does not constitute a waiver of interim attorney fees, which are an advance against the marital estate: this is the precise situation that the new interim fee system was enacted to address. "This Act shall be liberally construed and applied to promote the underlying purposes, which are to * * * make reasonable provision for spouses and minor children during and after litigation, *including provision for the timely awards of interim fees to achieve substantial parity in the parties' access to funds for litigation costs*." (Emphasis added.) 750 ILCS 5/102(5) (West 2004). The new interim fee system was "an attempt to address the problem of the 'economically disadvantaged spouse,' where one spouse uses his or her greater control of assets or income as a litigation tool, making it difficult for the disadvantaged spouse to participate adequately in the litigation." *In re Stella*, 353 Ill. App. 3d 415, 419 (2004).

No. 1-07-2940

The trial court, whose findings of fact are entitled to deference (*Fox v. Heimann*, 375 Ill. App. 3d 35, 46 (2007)), found that respondent's posture throughout the litigation was that petitioner "doesn't get a dime. *** She can wing it without a lawyer." It also found that respondent, who had "a credibility issue, a serious one," was making "selective disclosures" of his own income. Furthermore, while petitioner's attorneys had been paid $330,000 to date, the trial court found that respondent failed to disclose all payments made to his attorneys. Indeed, although petitioner contends that respondent has either paid or been granted leave to pay his attorneys $735,000, we cannot determine how much he actually paid all of his attorneys. More significantly, the trial court concluded that respondent had almost all the money that at one time was held in joint tenancy by the parties. If we accepted respondent's argument, we would ignore the clear policy of the amendments to "level the playing field" and give respondent an unfair advantage.

While petitioner cites authority as to when a premarital agreement can be found to be unfair and unreasonable (*In re Marriage of Murphy*, 359 Ill. App. 3d 289, 299 (2005); *In re Marriage of Berger*, 357 Ill. App. 3d 651, 657-58 (2005); *Warren v. Warren*, 169 Ill. App. 3d 226, 231 (1988); see also 750 ILCS 5/502(b) (West 2004)), we need not reach this issue, as we found that the premarital agreement does not constitute a waiver of interim attorney fees. Furthermore, the cases that respondent relies on, *Kohler v. Kohler*, 316 Ill. 33 (1925), and *Cimino v. Cimino*, 93 Ill. App. 2d 412 (1968), are distinguishable, as they predated the "leveling the playing field" amendments and did not involve interim attorney fees.

C. Constitutional Arguments

-11-

Respondent contends that the application of section 501(c-1) violates the contract clause and his due process rights. "All statutes enjoy a strong presumption of constitutionality, and the party challenging a statute bears the burden of clearly rebutting this presumption." *In re Estate of Jolliff*, 199 Ill. 2d 510, 517 (2002). "The constitutionality of a statute is a question of law, and our review is *de novo*." *Jolliff*, 199 Ill. 2d at 517.

### 1. *Compliance with Supreme Court Rule 19*

Petitioner argues that respondent waived his constitutional arguments because he did not notify the Attorney General when he filed his notice of appeal or docketing statement, which raised the constitutional issues, nor did he serve a copy of his appellate brief on the Attorney General, in violation of Supreme Court Rule 19 (210 Ill. 2d R. 19). We found above that the purpose of Rule 19 was fulfilled when petitioner gave the Attorney General notice in earlier proceedings and respondent gave notice of this appeal in December 2007. Where, as here, "the issue is of constitutional dimensions and has been fully briefed and argued, we choose to address plaintiff's contention." *Poullette v. Silverstein*, 328 Ill. App. 3d 791, 797 (2002).

### 2. *Contract clause*

Respondent argues that application of section 501(c-1) violates the contract clauses of the United States and Illinois Constitutions because it impairs an otherwise valid and enforceable premarital agreement and imposes obligations that petitioner waived. The United States Constitution provides that no state shall pass any law impairing the obligations of contracts. U.S. Const. art. I, §10. The Illinois Constitution provides that no law shall be passed impairing the obligation of contracts. Ill. Const. 1970, art. I, §16.

To establish a violation of the contract clause, a plaintiff must meet a four-part test: " 'First, the new legislation must involve a contractual obligation. Second, the legislation must impair the obligation. Third, the impairment must be substantial. Fourth, in order to be valid, the impairment must be "reasonable and necessary to serve an important public purpose." ' " *Kaufman, Litwin & Feinstein v. Edgar*, 301 Ill. App. 3d 826, 837-38 (1998), quoting *Bricklayers Union Local 21 v. Edgar*, 922 F. Supp. 100, 105 (N.D. Ill. 1996). The contract clause is only implicated when an existing contract is substantially impaired. *Reed v. Farmers Insurance Group*, 188 Ill. 2d 168, 175 (1999).

"[A] statute does not violate the Contract Clause simply because it has the effect of restricting, or even barring altogether, the performance of duties created by contracts entered into prior to its enactment." *Sanelli v. Glenview State Bank*, 108 Ill. 2d 1, 20 (1985). In contractual-impairment cases, the primary inquiry is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Panzella v. River Trails School District 26*, 313 Ill. App. 3d 527, 535 (2000). Respondent contends, without citing authority, that "[t]here is no question that the impairment was substantial" since he was ordered to pay $150,000 to petitioner's counsel under section 501(c-1). Without belaboring the points made above, we reiterate that interim fee awards are merely an advance against the marital estate. 750 ILCS 5/501(c-1)(2) (West 2004); *Beyer*, 324 Ill. App. 3d at 314. Furthermore, section 501(c-1) specifically provides that a party may claim an overpayment of fees at a contribution hearing pursuant to section 503(j). 750 ILCS 5/501(c-1), 503(j) (West 2004). We find that section 501(c-1) does not substantially impair any contractual obligation that the parties had regarding attorney fees.

No. 1-07-2940

Finally, respondent argues that "there is no important public purpose served by the impairment." While citing authority regarding the sanctity of enforcing contracts as written (*McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.*, 95 Ill. 2d 68, 72 (1983); *Sweney Gasoline & Oil Co. v. Toledo, Peoria & Western R.R. Co.*, 42 Ill. 2d 265, 267 (1969)), respondent ignores the policy behind the "leveling the playing field" amendments. "[A] 'fundamental reason' for the new interim fee system contained in the Marriage Act is to 'prevent a party from using his or her relative wealth as a litigation tool.' " *Stella*, 353 Ill. App. 3d at 420, quoting D. Hopkins, *"Leveling the Playing Field" in Divorce: Questions & Answers About the New Law*, 85 Ill. B.J. 410, 411 (1997). This is exactly what the trial court found that respondent was doing.

Accordingly, we find that application of section 501(c-1) does not violate the contract clauses of the United States and Illinois Constitutions.

### 3. *Due process*

Respondent also argues that section 501(c-1) violates his substantive due process rights. In evaluating a substantive due process claim concerning nonfundamental rights, the court applies the "rational basis test." *Messenger v. Edgar*, 157 Ill. 2d 162, 176 (1993). Under this test, the court must determine whether the legislation has a reasonable relationship to the public interest sought to be protected and whether the means the legislature has adopted to achieve its goals are reasonably related to such goals. *Messenger*, 157 Ill. 2d at 176. Respondent contends that making him pay $150,000 in interim attorney fees under section 501(c-1) constitutes a substantive due process violation because it unreasonably denies him the benefit of the bargain he negotiated, as reflected in the premarital agreement.

-14-

In claiming that section 501(c-1) is unconstitutional, respondent relies on *Messenger*. In *Messenger*, a statute provided for a "dissolution action stay" that restrained the parties from transferring or otherwise disposing of property upon service of a summons and petition. *Messenger*, 157 Ill. 2d at 166. In enacting the statute, the legislature sought to prevent the dissipation and concealment of marital assets once proceedings to dissolve a marriage had begun. *Messenger*, 157 Ill. 2d at 176. "In attempting to accomplish this purpose, however, the legislature has imposed upon parties to the dissolution of marriage a stay of *** not only marital assets but also" non-marital property, to which the other spouse can lay no claim. *Messenger*, 157 Ill. 2d at 176-77. Because the section had an "excessively broad sweep" to include a restraint on nonmarital property, "the means adopted by the legislature is not a rational means of accomplishing its purpose." *Messenger*, 157 Ill. 2d at 177.

Respondent claims that section 501(c-1) is "equally broad in its sweep" to the extent that it is applied to effect fee shifting during dissolution proceedings in derogation of a valid premarital agreement waiving a right to attorney fees. As we found in *Kaufman* and *Beyer*, there is no such over breadth problem here, as the statute provides that any overpayment of fees can be ordered to be remitted back to a party. *Beyer*, 324 Ill. App. 3d at 317; *Kaufman*, 301 Ill. App. 3d at 836. Furthermore, unlike the statute in *Messenger*, which applied indiscriminately to restrain all nonmarital property, for a party to be compelled to pay another party's interim fees, "a genuine disparity in the parties' respective access to financial assets must first be demonstrated, as would prevent one party from participating equally in pending litigation." *Beyer*, 324 Ill. App. 3d at 317.

"In enacting section 501(c-1), the legislature's goal was to level the playing field by equalizing the parties' litigation resources where it is shown that one party can pay and the other party cannot." *Beyer*, 324 Ill. App. 3d at 315. We reiterate that "interim awards are truly a form of 'temporary relief,' and *** section 501(c-1) still allows for the modification or revocation of any award." *Beyer*, 324 Ill. App. 3d at 316. "The legislature's goal is to level the playing field by equalizing the parties' litigation resources. The interim fee provisions bear a rational relationship to the purpose of the amendments." *Kaufman*, 301 Ill. App. 3d at 836.

Respondent further argues that the trial court violated his procedural due process rights because he was not permitted an evidentiary hearing. "Procedural due process claims concern the constitutionality of the specific procedures employed to deny a person's life, liberty or property." *Beyer*, 324 Ill. App. 3d at 317, citing *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 434 (2000). "Procedural due process is meant to protect people from the mistaken or unjustified deprivation of life, liberty or property, not from the deprivation itself." *Beyer*, 324 Ill. App. 3d at 318. "To survive a facial challenge, the procedures a statute incorporates must at least be adequate to authorize the deprivation with respect to some of the persons subject to it." *Beyer*, 324 Ill. App. 3d at 318. "At a minimum, due process requires that a deprivation of property cannot occur without providing notice and an opportunity for a hearing appropriate to the nature of the case." *Beyer*, 324 Ill. App. 3d at 318.

"In evaluating procedural due process claims, courts use a three-part test, under which the court (1) asks the threshold question whether there exists a liberty or property interest that [the state] has interfered with ***, (2) examines the risk of an erroneous deprivation of such an interest through the procedures already in place, while considering the value of additional

safeguards, and (3) addresses the effect the administrative burden would have on the state's interest." *Beyer*, 324 Ill. App. 3d at 318. Respondent only addresses the first factor. See *Beyer*, 324 Ill. App. 3d at 318 ("[A]ny person who is compelled to pay an opposing party's fees pursuant to section 501(c-1) has his property interfered with by the state"). Nevertheless, this court has already determined that nonevidentiary hearings are "procedurally proper means of deciding fee petitions, as long as the decision maker can determine, from the evidence presented in the petition and answer, what amount would be a reasonable award of fees and the opposing party has an opportunity to be heard." *Beyer*, 324 Ill. App. 3d at 318; *Kaufman*, 301 Ill. App. 3d at 837. Furthermore, "because an evidentiary hearing is still held if it is found necessary under section 501(c-1), there [is] no violation of procedural due process." *Beyer*, 324 Ill. App. 3d at 319; *Kaufman*, 301 Ill. App. 3d at 837. Section 501(c-1) is sufficient "to protect against the erroneous deprivation of property, be it nonmarital or marital." *Beyer*, 324 Ill. App. 3d at 319.

### C. Interim Fee Award

Respondent argues that even if section 501(c-1) applies, the trial court erred in granting the interim award because (1) the petition was unsupported by affidavits, (2) the amount was manifestly unreasonable, (3) there was no showing that petitioner lacked the ability to pay fees, and (4) there was no consideration of the statutory factors.

Section 501(c-1)(1) lists factors that a court should consider in deciding whether to award interim fees: (1) the income and property of each party; (2) the needs of each party; (3) the realistic earning capacity of each party; (4) any impairment to the present earning capacity of either party; (5) the standard of living established during the marriage; (6) the degree of complexity of the issues; (7) each party's access to relevant information; and (8) the amount of

payments made or reasonably expected to be made to the attorney for the other party. 750 ILCS 5/501(c-1)(1) (West 2004). "The allowance of attorney fees and the amount awarded are matters within the sound discretion of the trial court." *DeLarco*, 313 Ill. App. 3d at 111. Although an evidentiary hearing is not required under section 501(c-1), an interim award must be supported by "nontestimonial evidence, as submitted by the parties in the form of affidavits, financial disclosure statements, [or] requests for judicial notice." *Beyer*, 324 Ill. App. 3d at 320.

Section 501(c-1)(3) provides that a court must find that "the party from whom attorney's fees and costs are sought has the financial ability to pay reasonable amounts and that the party seeking attorney's fees *** lacks sufficient access to assets or income to pay reasonable amounts." 750 ILCS 5/501(c-1)(3) (West 2004). See *Beyer*, 324 Ill. App. 3d at 320 (for purposes of a section 501(c-1) petition, the party seeking the fees must demonstrate the inability to pay and the ability of the other party to pay both parties' fees). Respondent contends that the trial court erred in granting an interim award because petitioner failed to demonstrate that she was unable to pay her own fees.

We agree with petitioner that documentary evidence attached to her petition supports the conclusion that she lacks sufficient access to assets or income to pay attorney fees. She attached their respective Form 1040s for 2006 and respondent's disclosure statement. According to petitioner, respondent operated a real estate listing business and earned substantial income from investments; respondent's Form 1040 showed that his total income in 2006 was $139,443, and the trial court previously found that respondent selectively disclosed his income. Petitioner's Form 1040 for 2006 showed an income of $9,102. Her verified petition provided that her previous salary was $43,000 a year and that she was not rehired and was substitute teaching.

Later, she testified that she would be starting a new job as a kindergarten teacher the next week at approximately the same salary as her previous job. In the petition, she described the advances she had received and how much the parties' attorneys had been paid thus far. She also attached transcripts and orders finding respondent in indirect civil contempt for failing to pay petitioner's interim attorney fees; finding that respondent selectively disclosed income information; finding that he engaged in discovery abuse; and describing his delay tactics. Furthermore, petitioner alleged, and the trial court found, that respondent had control over previously joint funds.

In support of his argument that petitioner was able to pay her own attorney fees, respondent cites a number of documents and testimony in the record, arguing that they establish the following: (1) petitioner's mortgage application shows her income as $96,000; (2) in addition to her salary as a teacher, she has earnings as a licensed attorney, the owner of a real estate brokerage firm, an adjunct professor, and a Sunday school teacher; (3) she disclosed "some stale account information" showing cash assets of more than $170,000; (4) her inability to pay is self-imposed because their summer home in Michigan cannot be sold; and (5) petitioner is the sole titleholder of her deceased mother's co-op apartment, valued at over $90,000. However, respondent neither attached nor referenced any of these alleged facts in his response to petitioner's petition. To the extent that he relies on petitioner's entitlement to a disbursement from her mother's estate, the record only contains respondent's unsubstantiated allegations in his response to petitioner's petition instead of testimony or documentary evidence. Furthermore, while petitioner testified on October 26, 2007, that she would begin a new teaching position the next week at what she believed would be approximately $43,000 a year, she had been substitute

teaching until then, and the trial court heard her testimony regarding the new teaching position before imposing the contempt order.

Furthermore, section 501(c-1)(1) provides, "A responsive pleading shall set out the amount of each retainer or other payment or payments, or both, previously paid to the responding party's counsel by or on behalf of the responding party." 750 ILCS 5/501(c-1)(1) (West 2004). The trial court found that respondent failed to disclose *all* of the payments he made to his attorneys in his responses to the interim fee petition, in violation of section 501(c-1)(1). Respondent stated in his responsive memorandum that his counsel has received $253,000. On appeal, he reiterates in a footnote that his current counsel has received $253,117 for this divorce. However, respondent does not account for his previous attorneys: in his specific responses to petitioner's petition, he admitted petitioner's allegations that respondent paid $11,750 to Joel Brodsky; $43,600 to Audrey Gaynor; $7,570 to the Law Offices of Wes Cowell; $35,249.80 to Schiller, DuCanto & Fleck; an additional $100,000 to his current attorneys; and was granted leave to pay his current attorneys an additional $295,000 on December 13, 2006. Furthermore, his disclosure statement showed expenditures for "divorce legal fees" in the amount of $585,500. Therefore, his response failed to set out every payment he made to every attorney, and his briefs and the record do not simplify matters.

On appeal, respondent contends that he does not have the financial ability to pay the ordered fees. He states that he is 64 years old and lives almost exclusively on the interest and dividends generated by his historical investments. He also lists household and living expenses he incurs on a monthly basis, such as his phone and heating bills, and his property tax bill. However, respondent's response to petitioner's petition makes no mention of his own financial

circumstances, except to allege the amount he has already paid in fees to her attorneys, nor did he file his own affidavit. "Although the party seeking fees has the burden of showing the ability of the other party to pay, we note that waiver of a party's claim of inability to pay attorney fees may occur where a party refuses to present evidence of his own financial circumstances." *Beyer*, 324 Ill. App. 3d at 320.

Respondent also contends that the amount of the fees awarded was excessive. Section 501(c-1) provides that an interim award must reflect "reasonable [attorney] fees and costs." 750 ILCS 5/501(c-1) (West 2004). According to respondent, petitioner's counsel incurred an additional $133,700 in fees since November 30, 2006, and this number cannot be justified based on the trial schedule during the relevant period. Petitioner responds that since November 2006, the trial proceeded on seven days; a child support hearing occurred over three days; transcribed hearings proceeded on three days; and the parties' counsel appeared in court a number of other times for settlement discussions and hearings not transcribed by the court reporter. In addition, petitioner incurred fees for an interlocutory appeal and an emergency petition for supervisory order filed by respondent. Finally, petitioner incurred fees responding to respondent's motion to reconsider the trial court's child support award after the July 2007 hearing. Under these circumstances, we do not believe that the trial court abused its discretion in finding an award of $150,000 in interim fees to be reasonable. Indeed, "the trial judge, who had presided over the case for more than a year, was in a position to assess the reasonableness of the fees, based on his own experience and knowledge of the procedural history of the case." *Beyer*, 324 Ill. App. 3d at 321.

E. Contempt Order

-21-

It is well settled that exposing oneself "to a finding of contempt is an appropriate method of testing the validity of a court order." *Beyer*, 324 Ill. App. 3d at 321. "Furthermore, where a refusal to comply with the court's order constitutes a good-faith effort to secure an interpretation of an issue without direct precedent, it is appropriate to vacate a contempt citation on appeal." *Beyer*, 324 Ill. App. 3d at 321-22. Because respondent represented to the trial court that "the issue is not to be contemptuous. It's to test the validity of the order," we vacate the October 26, 2007, contempt finding.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's order compelling respondent to pay interim fees and vacate the contempt order.

Affirmed; contempt order vacated.

QUINN, P.J., and NEVILLE, P.J., concur.