**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jun 13 2013, 6:19 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**F. STEPHEN SHEETS**
**STEVEN T. CHARLES**
F. Stephen Sheets & Associates
Evansville, Indiana

ATTORNEY FOR APPELLEE:

**CRYSTAL SPIVEY WILDEMAN**
Kahn, Dees, Donovan & Kahn, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEBORAH K. WAGNER AS GUARDIAN OF THE PERSON AND ESTATE OF HARRY L. TILLMAN, | ) ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 82A05-1207-GU-375 |
| JEFFREY L. FINNEY AS GUARDIAN OF THE PERSON AND ESTATE OF R. VIRGINIA TILLMAN | ) ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Renee Allen Ferguson, Magistrate
Cause No. 82D07-0806-GU-76

**June 13, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Deborah Wagner ("Wagner"), as Guardian of the person and estate of Harry Tillman ("Harry") appeals an order enforcing a prenuptial provision for spousal support upon petition by Jeffrey Finney ("Finney"), as Guardian of the person and estate of R. Virginia Tillman ("Virginia"). We affirm, but remand for clarification of the payee of attorney's fees.

## Issues

Wagner presents six issues for review:

I.      Whether the trial court erroneously concluded that the prenuptial agreement between Harry and Virginia included an enforceable spousal support provision;

II.     Whether the order for payment of nursing facility expenses as they become due is excessive;

III.    Whether the enforcement order properly included reimbursement to Virginia's daughter for payment of Virginia's nursing facility charges;

IV.     Whether the issuance of the interim order preceding an evidentiary hearing denied Harry's estate procedural due process;

V.      Whether the trial court abused its discretion by finding Wagner in contempt of court; and

VI.     Whether Virginia's estate was entitled to attorney's fees.

## Facts and Procedural History

On June 3, 1998, Harry and Virginia – each over eighty years old – married. In contemplation of the marriage, they executed a prenuptial agreement to be governed by the laws of Illinois.[1] At that time, Harry had assets in excess of $900,000 and Virginia had assets

---

[1] Their prenuptial agreement included the clause:

> The terms and provisions of this agreement shall be construed and interpreted in accordance with the laws of the jurisdiction of the State of Illinois in such case made and provided, whether or not the parties continue to reside in the State of Illinois subsequent to their marriage.

(App. 32.)

2

of approximately $87,600.  The couple resided together for a decade in the residence Virginia

had previously acquired in the State of Illinois.

In 2008, Harry suffered a debilitating stroke.  Wagner, who is Harry's daughter and a

registered nurse, believed that Virginia was unable to provide the degree of care that Harry

needed.  Wagner brought Harry into the State of Indiana, admitted him into a nursing facility

in Warrick County, and obtained guardianship over his person and estate.  She and her

husband moved into the Indiana residence that Harry owned.

Virginia moved into an assisted living facility, but was later admitted into a nursing

facility in Henry County, Illinois.  After Virginia suffered a stroke and was diagnosed with

dementia, her son, Finney, obtained guardianship of her person and estate.  He sold

Virginia's residence and applied the proceeds to her nursing facility bills.

Wagner paid the bills for Harry's nursing facility and all household expenses for his

Indiana house from the funds of Harry's estate.[2]  She also provided some funds for Virginia's

benefit.[3]  In October of 2011, Virginia's separate assets were depleted.  She continued to

receive Social Security benefits in the amount of $1,445 monthly, significantly less than

[2] Harry receives Social Security payments and some investment income, amounting to $2,119 monthly income.  However, according to her testimony, Wagner has not attempted to generate income from the Evansville residence, valued at $125,000 in 1998.  She and her husband have resided at the property without payment of rent to the estate, while substantial home maintenance/improvements and utilities, including internet, phone, and cable bills, have been charged to the estate.  As of the time of the hearing, Wagner had not listed the residence for sale or advertised it for rent.

[3] The 2011 biennial guardianship accounting (covering the period from July 2, 2008 to December 31, 2010) stated that "total spousal support" had amounted to $12,400, including $1,200 to "Jeff Finney."  (Appellee's App. at 67.)  The biennial accounting period predated Finney obtaining guardianship of Virginia in 2012.  Finney testified that he had personal knowledge that two checks had been received, one in the amount of $400, dated May 6, 2010, and one in the amount of $800, dated April 5, 2010.  Virginia's estate produced copies of those checks.

required to maintain her residence in the nursing facility.

Over time, Harry's medical needs and other expenditures from his estate caused a dramatic decrease from the former value. Wagner stopped making payments for Virginia's benefit and her husband contacted Finney with the proposal that the elderly spouses should divorce.

On May 3, 2012, Finney filed a petition to enforce the prenuptial agreement.[4] A hearing was conducted on May 23, 2012, at which the trial court ordered the parties to submit briefs on applicable Illinois law. Finney, on behalf of Virginia, moved the court for an interim support order. He advised the court that his sister, Jeralyn Bye ("Bye") had paid significant sums for Virginia's care but the bills had become delinquent, and Virginia was in imminent danger of eviction from her nursing facility. Wagner filed a petition for dissolution of her father's marriage to Virginia.[5]

On July 3, 2012, the trial court ordered Wagner, as guardian, to "immediately and without delay" pay $7,690.76 past due to Virginia's nursing facility in Kewanee, Illinois. (App. 13.) She was further ordered to make payments of $2,755 per month to Virginia's attorney to pay for her expenses. Wagner attempted an interlocutory appeal, which was ultimately held in abeyance, and filed a motion for stay in the trial court without securing an order thereon, but did not make any payments pursuant to the interim order.

---

[4] It appears that an action for a declaratory judgment with regard to the prenuptial agreement was subsequently filed in an Illinois court. At a hearing in this case, the trial court was advised that the Illinois action was being dismissed.

[5] The petition was dismissed and the trial court's dismissal order is the subject of a separate appeal in this Court.

4

On September 25, 2012, Finney filed a petition for contempt. An evidentiary hearing was conducted on October 8, 2012, at which Bye, Finney, and Wagner testified regarding the financial circumstances of the spouses. The parties also offered differing interpretations of the prenuptial agreement. Finney contended that Harry had, pursuant to the express terms of the prenuptial agreement, agreed to provide for Virginia so long as they were married. Wagner argued that Virginia had waived any and all claims to spousal support of any kind whatsoever and suggested that her guardian should have more promptly pursued Medicaid coverage.[6]

On November 1, 2012, the trial court issued an order granting the petition to enforce the spousal support provision of the prenuptial agreement. Wagner was found to be in contempt of court and was ordered to pay from estate funds attorney's fees Bye had incurred in the aggregate amount of $41,197.21 ($26,351.65 to Kahn, Dees, Donovan & Kahn and $14,845.56 to Hasselberg, Williams, Grebe & Birdsall).

This appeal ensued.

**Discussion and Decision**

Prenuptial Agreement Spousal Support Provision

In the prenuptial agreement, the spouses had agreed that the laws of Illinois were applicable, regardless of where the parties might become domiciled in the future.

In Illinois, a prenuptial agreement is considered to be a contract and the rules

---

[6] As of the hearing date, Virginia was not receiving public assistance and, according to Finney's investigation, she was ineligible for assistance as a surviving widow of Finney's father, a World War II veteran, because she had remarried. Wagner's attorney advised the trial court that an individual, although legally married, could potentially obtain Medicaid coverage for health care if she demonstrated both that she was personally indigent and that the spouse with assets refused to make a contribution to her expenses.

governing the interpretation of contracts apply. <u>In re Marriage of Rosenbaum-Golden and Golden</u>, 884 N.E.2d 1272, 1280 (Ill. App. Ct. 2008), <u>appeal denied</u>. The primary goal of the court in the construction of a contract is to decide and give effect to the intent of the parties as it is expressed through the words of the contract. <u>Id.</u> If the terms are not ambiguous, the intent of the parties must be decided solely from the contract's plain language. <u>Id.</u>

The prenuptial agreement between Harry and Virginia includes the following provision:

> Tillman agrees to provide, as long as he remains married to Finney, for the reasonable support, care and maintenance of Finney.

(App. 31.) Wagner claims that this provision should be of no effect because Virginia waived her right to receive spousal support of any kind pursuant to paragraphs 1 through 3, as follows:

> Each party does hereby release and waive all common-law and statutory rights of every kind and nature now existing or which hereafter may exist, which may be created in the separate property of the other party, which either party, as husband or as wife, may have or could have arising during the marriage of the parties, as a result of the marriage of the parties, upon the termination of the marriage of the parties prior to death or upon the death of either of the parties. This agreement includes any and all similar or dissimilar common-law or statutory rights, including spouses awards, and allowances of any state of the United States or any country that may have jurisdiction over the parties or the property of the parties hereto.
>
> Each of the parties agrees that any and all statutory or common-law right in or to any personal or real property owned separately or by the other party now or in the future, and any and all other rights, claims or interests which either party may have claim or assert in or to the separate estate of the other, whether during the marriage of the parties or subsequent to the termination thereof by reason of separation, divorce, annulment, or death shall be and are hereby waived and barred; and that this agreement shall be a legal and equitable bar to any and all claims which either party may make to the property of the other,

6

except as to such devise or bequest, if any, as may be provided for either party in the Last Will and Testament of the other, and except as to such contractual rights or survivorship provisions as may be created in real or personal property after the marriage of the parties as created by written instrument by the parties' voluntary acts. Each of the parties hereby acknowledges waiver of any statutory claim against the estate of the other upon the death of the other.

Except for the provisions of paragraph number 7 of this agreement, which paragraph shall take precedence over any other apparently conflicting provision of this agreement, each of the parties agrees that neither party shall make any claim for or be entitled to receive any money or property, both real or personal, from the other party in the way of alimony, maintenance or spousal support in the event of separation, annulment, dissolution or any other domestic relations proceeding of any kind or nature. Each of the parties especially waives and relinquishes any claim for alimony, maintenance or spousal support, including, but not limited to, any claims for services rendered, work performed, and labors expended by either of the parties during the entire length of the marriage.

(App. 28-29.) These provisions may be read in harmony. Paragraphs one through three contemplate an end of the harmonious marital relationship by death, dissolution, or domestic proceeding. Virginia agreed to forgo any common law or statutory right to support in such circumstances.

Notwithstanding this language, paragraph eight is directed to Harry's obligation while the marriage continues. He unambiguously contracted to provide for Virginia's "reasonable support, care and maintenance" so long as he remains married to her. (App. 31.) The trial court properly looked to this plain language to determine the intent of the parties.

Harry intended to assume a duty for Virginia's support while the marriage was in-tact. Virginia and Harry remain married. While competent, neither initiated dissolution proceedings, a legal separation, or an independent and adversarial action for support. Finney seeks not to establish a common law or statutory right to monetary support on Virginia's

7

behalf; rather, he seeks to enforce a contractual duty. The construction urged by Wagner is that Harry assumed a contractual duty to support Virginia – during an ongoing marriage – but Virginia waived her right to enforce this contractual duty, all within the four corners of the same instrument. We, like the trial court, find this to be a tortured construction.

The trial court found that Harry's intent, as expressed in the prenuptial agreement, was to be responsible for Virginia during the marriage but be able to protect assets in the event of divorce or death. This is consistent with the language of the contract as a whole. The marriage of Harry and Virginia has not been dissolved; her contractual right of spousal support has not been forfeited.

<u>Reasonable Expenses</u>

Wagner next contends that, in ordering the estate to fully pay for Virginia's nursing facility expenses, the trial court ordered payment beyond that which is reasonable, given the estate value. She claims that Harry is required "to impoverish himself and jeopardize his own care – something no reasonable person would do." (Appellant's Br. at 13.) She also cites <u>Cress v. Recreation Servs., Inc.</u>, 795 N.E.2d 817, 850 (Ill. App. Ct. 2003), <u>appeal denied</u>, for the proposition that the proper measure of damages in a breach of contract action is the amount of money that would place the injured party in as satisfactory a position as he would have been had the contract been performed. However, as best we can discern Wagner's argument, she asserts that the trial court should have fashioned a prospective order for an amount less than the deficit between Virginia's nursing facility expenses and her income to achieve an equitable outcome.

8

According to Wagner's accounting, at the time of the last hearing, Harry's estate consisted of cash in the amount of $189,541.86 and a residence with an assessed valuation of $129,500. She lists Harry's expenses as $93,000 annually, including nursing facility charges of $75,300, taxes of $6,000, clothing and sundries of $6,000, insurance and guardianship bond of $1,500, fiduciary fees to bank of $1,200, medication of $1,200, and miscellaneous expenses of $1,800.

Virginia's nursing facility charges $48,545 annually. She has an annual income of $17,340, from which she must purchase medication. As such, there is a monthly shortfall of nearly $3,000. Finney's attorney advised the trial court that the life expectancy for ninety-three-year-old Virginia was between three and four years.

Harry agreed to provide, during the marriage, for "the reasonable support, care and maintenance" of Virginia. (App. 31.) It has not been contended that Virginia's residence in a skilled nursing facility is an unreasonable choice, given her advanced age and need for intensive monitoring. Nor has it been suggested that the charges of the particular facility are unreasonable in comparison to the prevailing market. The trial court did not order excessive payments in the sense that the charges for Virginia's care are anything other than ordinary, necessary, and reasonable. Rather, the reality is that Harry may not be able to fulfill his contractual duty to his wife at some point even if her expenses are reasonable.

The trial court was asked to allocate limited resources to provide for the care of protected individuals in their nineties, each gravely debilitated and requiring around-the-clock care. It is readily apparent that there are not sufficient estate resources to fully provide

9

for nursing facility care for both spouses for an extended period of time. Wagner has taken the position that all liquid assets of Harry's estate are allocable to his nursing care and the maintenance of his former residence (which she and her spouse occupy rent-free) and that Virginia should become dependent upon public assistance. To this end, she filed a dissolution petition, and she acknowledged having no authorization from Harry. Such apparently represents a reasonable allocation of limited resources in Wagner's view. We disagree.

The trial court's order will result in provision for the needs of both spouses, albeit for a limited time. Even if the non-performing asset, the residence, is sold and the proceeds added to the existing $189,541.86 in cash, the liquid assets would cover the shortfall between Social Security payments and nursing facility charges for only a few years.[7] However, given the circumstances before the trial court, we cannot conclude that the order for payment of Virginia's nursing facility charges constitutes an unreasonable award outside the parameters of the prenuptial contract.

Reimbursement to Jeralyn Bye

Wagner next claims that the trial court erred in ordering that Bye be reimbursed for sums paid for Virginia's nursing facility care. Wagner contends that Bye was not liable for her mother's support and so any such payments were a gift from Bye to her mother.

The language of the trial court's order is somewhat confusing, ordering

---

[7] Harry's nursing facility charges $75,300 per year, while his income is $25,428 per year, leaving a shortfall of $49,872 before personal expenses. Virginia's nursing facility charges $48,545 per year, while her income is $17,340 per year, leaving a shortfall of $31,205 before personal expenses.

10

reimbursement to Bye but also ordering direct payment of attorney's fees to law firms:

> It is ordered that Jeralyn A Bye be reimbursed for expending her personal funds for attornys [sic] fees to bring this action and to care for her mother when that should have been paid by the guardianship estate. Jeralyn Bye is ordered to be paid $41,197.21 from the guardianship, payable immediately. … The guardian, from the guardianship estate, is order[ed] to pay attorney fees to Kahn, Dees, Donovan & Kahn in the amount of $26,351.65. The guardianship estate is ordered to pay attorney fees to the firm of Hasselberg, Williams, Grebe & Birdsall in the amount of $14,845.56.

(App. 15.) Exhibit H indicates that Bye had expended $12,150 to pay Virginia's nursing facility and $41,197.21 in attorney's fees. As the trial court ordered the payment of $41,197.21 to Bye, it appears that the trial court intended that Bye be reimbursed for attorney's fees but not nursing facility charges. Wagner has demonstrated no error in this regard. However, to avoid duplication and depletion of limited estate assets, we remand for clarification of whether the attorney's fees are to be paid directly to the law firms involved or to Bye.

Due Process

Wagner claims that the trial court acted in "disregard for the basic requirements of constitutional due process" by issuing an interim support order without first conducting an evidentiary hearing. Appellant's Br. at 15.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Some form of hearing is required before an individual is finally deprived of a property interest. Id.

11

Here, the attorneys for both estates appeared at a hearing on May 23, 2012. No evidence was heard at that time. Both attorneys agreed to a briefing schedule and a future hearing date at which evidence would be presented. Indeed, the attorney for Harry's estate advised the trial court: "the issue of reasonableness is going to have to be litigated, and we just simply don't have enough information about what's reasonable now for her to come to some sort of a conclusion to the case." (Tr. 9.)

Additionally, the interim order specifically provided:

> This Order shall not affect either party's ability to challenge the amount or appropriateness of the support, since both issues will be fully litigated at the hearing on October 8, 2012.

(App. 13.) The interim order's language did not purport to permanently dispose of the matter of support, and therefore, Harry's estate was not finally deprived of a property interest without a hearing.

## Contempt of Court Finding

Wagner contends that the trial court abused its discretion by finding her in contempt of court for her failure to make interim support payments as ordered. Wagner concedes, citing In re Marriage of Betts, 558 N.E.2d 404 (Ill. App. Ct. 1990), appeal denied, that failure to comply with support and maintenance orders can constitute indirect civil contempt. However, she argues that she was "entitled to wait" because this Court reinstated her interlocutory appeal of the interim order only days before the October 8, 2012 hearing, the issues were to be fully litigated at that hearing, and "the money would have been gone" had she paid and the trial court then ruled in favor of Harry's estate. Appellant's Br. at 19-20.

12

At the October 8, 2012 hearing, the following testimony was elicited:

Question: Miss Wagner, were you aware that this Court entered an interim order on July 3rd, of this year?

Wagner: Yes.

Question: Let me show you a copy of that. It's in the Court's record dated July 3rd, 2012. Did you become aware of that order immediately after it was entered? Or when did – when did you first learn of it?

Wagner: I believe Mr. Sheets let us know pretty much immediately.

Question: And did you make any payments pursuant to that order when you found out about it?

Wagner: No, we did not.

* * *

Question: Do you see the words immediately and without delay anywhere in that order?

Wagner: Yes, right here.

* * *

Question: And you didn't pay – make any payments when you first learned of that order, right?

Wagner: No I did not.

Question: And you have not made any payments pursuant to that order as of today?

Wagner: No I have not.

(Tr. 142-43.) Accordingly, the evidence is that Wagner, with full knowledge of the interim order and its directive, had made no payment as of the hearing date. There was uncontroverted evidence that Harry's estate had sufficient funds to comply with the interim

13

order. As such, the evidence leads solely to the conclusion that Wagner willfully failed to comply with a court order.

She suggests that her behavior may be excused because she pursued an interlocutory appeal, although she did not secure a stay of the trial court's order. See Appellate Rule 39(A) (providing that an appeal does not stay the effect or enforceability of a judgment or order of a trial court unless the trial court orders otherwise). She cites no authority for the proposition that she was entitled to disregard an existing court order because a final hearing was soon scheduled and she did not want to risk losing estate money if she obtained a favorable decision. She has not persuaded this Court that the trial court abused its discretion by finding her to be in contempt of court.

### Attorney's Fees

Finally, Wagner argues that Virginia's estate is not entitled to attorney's fees because the prenuptial agreement includes no such provision, Illinois follows the "American Rule"[8] and "there is no basis in the record for the trial court to have ordered Harry to pay any of Virginia's attorney's fees." Appellant's Br. at 17. She makes no claim that the particular charges are unreasonable.

It was in an Indiana action that Wagner was appointed the guardian of Harry's person and estate. As guardian, Wagner was charged with, inter alia, a duty to observe and honor the protected person's contractual obligations. See Ind. Code § 29-3-8-7. Instead, she

---

[8] Under the "American Rule," parties pay their own attorney's fees unless an agreement between the parties, a statute, or other rule provides otherwise. Smyth v. Hester, 901 N.E.2d 25, 32 (Ind. Ct. App. 2009), trans. denied.

refused to do so, defied a court order, filed an unsolicited dissolution petition, and continued to live rent-free as she claimed Harry's assets were inadequate for his and his spouse's direly needed nursing care. The trial court found Wagner in contempt of court, in essence finding that she had breached her fiduciary duty, and ordered the payment of attorney's fees.

A guardian may be personally liable for damages for breach of fiduciary duty. See In re Guardianship of Stalker, 953 N.E.2d 1094, 1107 (Ind. Ct. App. 2011) (finding damages to be appropriate for guardian's breach of fiduciary duty). Here, however, the trial court ordered payment of attorney's fees from the assets of Harry's estate. Indiana Code section 29-3-9-9 provides:

> (a)     Whenever a guardian is appointed for an incapacitated person or minor, the guardian shall pay all expenses of the proceeding, including reasonable medical, professional, and attorney's fees, out of the property of the protected person.

> (b)     The expenses of any other proceeding under this article that results in benefit to the protected person or the protected person's property shall be paid from the protected person's property as approved by the court.

Pursuant to Indiana Code section 29-3-2-4, we review an award of attorney's fees in a guardianship proceeding for an abuse of discretion.[9]

Here, the benefit conferred upon Harry from the legal proceedings was that his express wishes were honored as his spouse was provided comfort and care in her elder years. This happened only after protracted legal proceedings. Wagner refused to honor Harry's contractual obligation, even when ordered to do so immediately by the trial court. She filed a

---

[9] Indiana Code section 29-3-2-4(a) provides: "All findings, orders, or other proceedings under this article [Guardianships and Protective Proceedings] shall be in the discretion of the court unless otherwise provided in this article."

15

dissolution petition without Harry's authorization, by all appearances for the sole purpose of evading any obligation to provide for Virginia's nursing facility care. She suggested that Virginia should become dependent upon public assistance as soon as possible even if she remained Harry's spouse (requiring a move to a publicly-funded nursing facility). All legal proceedings, even the declaratory judgment action filed and dismissed in another state, were occasioned by Wagner's attempted evasion of her ward's contractual duty. Moreover, it is uncontroverted that Virginia's estate lacked any assets with which to pay attorney's fees, while Harry's estate had cash and an asset – the house – with potential to become income-producing. We find no abuse of discretion in the trial court's award of attorney's fees.

### Conclusion

The trial court properly found the spousal support provision of the prenuptial agreement to be enforceable. Harry's estate was not subjected to an unreasonable order or denied due process of law. The trial court did not abuse its discretion when it found Wagner in contempt of court. Virginia's estate is entitled to attorney's fees.

Affirmed; remanded for clarification of attorney's fees payee.

NAJAM, J., and BARNES, J., concur.